UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

VLADIMIR GUSINSKI,

        Plaintiff,

    - against -

SAGI GENGER,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10 Civ. 4506 (SAS)(GWG)

**AMENDED COMPLAINT**

PLAINTIFF DEMANDS
A TRIAL BY JURY

ECF CASE

    Plaintiff Vladimir Gusinski, by his attorneys, alleges for his complaint against Defendant Sagi Genger based upon knowledge as to himself and information and belief as to the acts of Defendant, as follows:

**Nature of the Claims**

    1.    Plaintiff brings this action to obtain injunctive relief and damages for Defendant's fraudulent transfers intentionally designed to hinder, delay and defraud monetary obligations owed to Plaintiff.

    2.    In 2001, Plaintiff extended a loan of US$ 2.5 million (the "Loan") to AG Holdings Company ("AG Holdings"). The loan was secured by a pledge by AG Real Estate Partners L.P. ("AG Real Estate") and by a personal written assurance by Defendant Sagi Genger. AG Holdings defaulted in payment, and the entire loan, with interest, is now due and owing. In December 2009, Plaintiff obtained a judgment in New York state court against AG Holdings for US$ 4,357,551.99 on the Loan.

3. Since 2005, Defendant has surreptitiously manipulated and transferred assets within the web of companies that he has controlled—including AG Holdings, its subsidiary AG Properties Company ("AG Properties"), AG Holdings' former parent AG Real Estate, AG Real Estate LP, Riverside General Partner LP ("Riverside General Partner"), and TPR Investment Associates, Inc. ("TPR")—to ensure that the Loan would never be re-paid. In particular, Defendant has designed and implemented a series of fraudulent transactions to render the companies he has controlled wholly incapable of paying Plaintiff the money due to him, to deplete all security interests that were promised to Plaintiff to secure the Loan, and to insulate himself fully from any personal liability on the debts of AG Holdings.

4. Plaintiff brings this action to obtain injunctive relief to set aside and to annul the fraudulent conveyances. Plaintiff is also entitled to damages and restitution sufficient to compensate him for the losses that he has sustained as a result of such conduct, including his attorney's fees in prosecuting this action, as provided by New York statute. Finally, this action seeks to impose upon Defendant, as the alter ego of the companies that he has controlled, liability for their debts.

### Parties

5. Plaintiff Vladimir Gusinki, also known as Vladimir Gusinsky, is a foreign national who lent US$ 2.5 million to AG Holdings.

6. Defendant Sagi Genger is a joint US-Israeli citizen residing at 1211 Park Avenue, New York, New York, 10128.

### Jurisdiction and Venue

7. This Court's jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a)(2) in that the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and there is diversity of citizenship between Plaintiff and Defendant.

8. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(a), as Defendant resides and a substantial part of the events or omissions giving rise to the claims occurred in this District.

**Factual Background**

9. On or about July 24, 2001, Plaintiff loaned US$ 2.5 million to AG Holdings, formerly known as AG Land Number 1 Company. On April 18, 2002, the Loan was converted to C$ 3,845,750.

10. The Loan is secured by a Promissory Note, a Pledge Agreement, and a written Assurance.

The Promissory Note and Pledge Agreement

11. A Promissory Note, dated July 24, 2001, and amended by an Allonge dated April 18, 2002 (as amended, the "Promissory Note"), provides that AG Holdings shall repay to Mr. Gusinski the principal amount of C$ 3,845,750. A copy of the Promissory Note is attached as Exhibit A.

12. The Promissory Note provides that it is secured by a Pledge Agreement, dated July 24, 2001 and executed by AG Real Estate (the "Pledge Agreement"). A copy of the Pledge Agreement is attached as Exhibit B.

13. The Pledge Agreement grants Plaintiff a security interest in all shares in AG Holdings beneficially owned by AG Real Estate, whether currently or in the future. Paragraph 3.03 of the Pledge Agreement prohibits AG Real Estate from transferring or encumbering its shares in AG Holdings without the express written consent of Plaintiff.

14. Paragraph 4.01 of the Pledge Agreement provides that AG Real Estate shall pay any distributions made by the maker of the Promissory Note, AG Holdings Company, to Plaintiff.

AG Holdings' Valuable Assets

15. At the time of the Loan and execution of the Pledge Agreement, AG Holdings was the 50% owner of AG Properties, which directly or indirectly owned valuable real estate in Canada. In 2005, AG Holdings became the 100% owner of AG Properties by purchasing its remaining 50% interests for C$ 1,000,000.

16. Upon information and belief, in or around February 2002, the proceeds of the Loan were used by AG Holdings to extend a loan to AG Properties (the "AG Properties Loan") for the purpose of purchasing two real estate properties in Montreal, Canada—located at 3455 Rue Durocher and 1650 Lincoln Avenue, Montreal—for a total purchase price of approximately C$ 20 million. The two properties were subsequently resold and the proceeds of such sales distributed to AG Properties.

17. Upon information and belief, in 2004, AG Properties, using the proceeds from the sale of the Durocher and Lincoln properties, invested in Riverside Properties (Canada) LP ("Riverside Properties"), a Delaware limited partnership of which Riverside General Partner, a Delaware limited partnership, is the general partner.

18. In 2005, Riverside Properties acquired a residential complex in Montreal known as Domaine La Renaissance, which in 2009 was appraised at C$ 16.5 million.

19. Accordingly, AG Holdings' chief asset was its ownership of AG Properties, which, directly or indirectly owned multi-million dollar real estate in Canada. Further, the AG Properties Loan, for the principal amount of over US$ 3.8 million and bearing interest at 6.5% per annum, provided for AG Holdings to receive substantial interest and/or principal payments from AG Properties beginning in 2003 with the outstanding principal balance due in 2011.

Written Assurance

20. Upon information and belief, in 2004 and 2005, Defendant assumed management positions and began to exercise domination and control over AG Holdings, AG Properties, AG Real Estate and Riverside General Partner.

21. In 2005, Defendant signed a written assurance that all funds received by AG Properties or Riverside General Partner would be set aside for repayment of the Loan (the "Assurance"). A copy of the Assurance is attached as Exhibit C.

22. The Assurance specifies that the funds to be set aside include those received in connection with AG Properties' investment in Riverside Properties.

23. Accordingly, the Promissory Note, Pledge Agreement and Assurance, taken together, formed a collective obligation on the part of entities under Defendant's control to repay the Loan to Plaintiff: AG Holdings as an obligor to Plaintiff under the Promissory Note; AG Real Estate, undertaking to divert distributions from AG Holdings to Plaintiff, as an obligor to Plaintiff under the Pledge Agreement; and AG Properties and Riverside General Partner as obligors to Plaintiff under the Assurance, as funds received by them in connection with Riverside Properties were to be set aside for repayment of the Loan. Further, as the alter ego of these companies under his control at all relevant times, Defendant was ultimately responsible for the debts of these entities.

Defendant's Fraudulent Scheme

24. After assuming control of AG Holdings, AG Properties, AG Real Estate and Riverside General Partner by 2005, Defendant embarked on a fraudulent scheme to render the Promissory Note, Pledge Agreement and Assurance worthless. Beginning in 2005, Defendant methodically stripped AG Holdings of its main asset — its indirect ownership of multi-million dollar real estate in Canada through its subsidiary AG Properties. Defendant rendered AG Holdings and AG

Properties incapable of paying back the money due to Plaintiff under the Loan, the accrued and unpaid balance of which is now over $4 million. Defendant accomplished this by, among other actions, transferring money from AG Properties to TPR through sham transactions without valid consideration and diluting AG Properties' ownership interest in Riverside Properties.

Depletion of Cash Reserves

25. In 2005, AG Properties transferred to TPR over C$ 1.5 million or over US$ 1.3 million at the then current exchange rates, without any valid consideration. According to statements made by Defendant, the aforementioned payments from AG Properties to TPR were pursuant to an alleged agreement for the provision of "management services, office space, secretarial support" which stipulated the payment of US$ 750,000 in consultancy fees from AG Properties to TPR.

26. In this instance, Defendant, using his personal investment vehicle TPR, grossly enriched himself by looting over US$ 1.3 million from AG Properties' cash reserves pursuant to a questionable consultancy agreement, which only called for payments of US$ 750,000.

27. This scheme of siphoning money from AG Properties to TPR depleted the cash reserves of AG Properties, thereby preventing AG Properties from fulfilling its monetary obligations to Plaintiff. Further, this scheme precluded AG Properties from making any distributions or repaying its loan obligations to AG Holdings.

Defendant's Scheme to Further Indebt AG Holdings

28. By preventing AG Holdings from receiving proceeds from its subsidiary AG Properties, AG Holdings' only asset with any value, Defendant ensured that AG Holdings would not be able to make payments to Plaintiff due under the Loan. For example, in order for AG Holdings to make a scheduled interest payment to Plaintiff in 2006, Defendant directed AG Holdings to obtain a loan from

Riverside General Partner, which in turn obtained a loan from TPR. Thus, AG Holdings became indebted not only to Plaintiff, but also to an entity under Defendant's control.

Defendant's Fraudulent Transfer of Security Interests

29.  Defendant further defrauded Plaintiff when, in July 2005, he transferred all of AG Real Estate's interests in AG Holdings to 1650 Lincoln Trust (the "Lincoln Trust"), a Canadian trust, without the consent of Plaintiff, a violation of the terms of the Pledge Agreement. Wearing many hats, Defendant executed the transfer document on behalf of all the parties involved, i.e., AG Holdings, AG Real Estate, AG Real Estate Partners GP (the general partner of AG Real Estate), and AG Canadian Properties LLC (the trustee of the Lincoln Trust).

30.  In an apparent attempt to cover his tracks, Defendant also executed a document, which bore no other person's signature than his own, in which he acknowledged that the interests acquired by the Lincoln Trust were subject to the Pledge Agreement. Defendant, who did not seek Plaintiff's consent to this transaction, executed this document not for any legitimate business purpose but solely to shield himself from valid obligations for the debts of AG Holdings.

31.  Defendant thus attempted to ensure that his personal liability would be limited in the event that his fraudulent scheme to avoid the debt owed to Plaintiff under the Loan resulted in a default. Further, this fraudulent scheme deprived AG Real Estate of any distributions it might receive from AG Holdings as its 100% owner. As such, the scheme rendered AG Real Estate unable to fulfill its obligations under the Pledge Agreement by diverting any cash it was entitled to receive from AG Holdings to another of Defendant's companies.

Defendant's Fraudulent Treatment of the AG Properties Loan

32.  Judgment debtor AG Holdings was entitled to receive substantial payments from AG Properties in the years 2003 to 2011 pursuant to the AG Properties Loan, a loan that was made

possible by the Loan extended to AG Holdings by Plaintiff. The promissory note underlying the AG Properties Loan provided for interest and principal repayment dates corresponding to the repayment obligations of AG Holdings to Plaintiff under the Promissory Note. Upon information and belief, had AG Properties fulfilled its payment obligations to AG Holdings pursuant to the AG Properties Loan, AG Holdings would have been able to fulfill its payment obligations to Plaintiff under the Promissory Note.

33.  However, Defendant effectively tore up the AG Properties Loan on January 1, 2006 when he personally signed a "Binding Agreement and Understanding on Debt" (the "Debt Agreement") on behalf of all five parties thereto—AG Real Estate LP, AG Holdings, AG Properties, and two subsidiaries of AG Properties. With this one-page document, Defendant converted all outstanding loans between the parties into capital contributions, canceling, *inter alia*, the repayment obligations of AG Properties to AG Holdings under the AG Properties Loan. Whereas AG Holdings was previously able to rely on regular payments from AG Properties timed to coincide with its repayment obligations to Plaintiff, Defendant effectively put a stop to this by signing the Debt Agreement as illustrated by the following diagram:



34. Once again attempting to cover his tracks, Defendant also executed an amendment to the Debt Agreement on behalf of all the parties, stating "Nothing in this agreement will be read to enforce the frustration of the legal rights reserved under the $2.5mm note to Vladimir Gusinski or violate the Pledge Agreement." Nevertheless, with this transaction Defendant furthered his fraudulent scheme to deny Plaintiff the monetary obligations owed to him by cutting off the scheduled interest and principal payments from AG Properties to AG Holdings, thereby preventing AG Holdings from repaying the Loan to Plaintiff.

<u>Defendant's Dissipation of AG Properties' Assets</u>

35. Defendant also engaged in a scheme to dissipate fully AG Properties' interests in Riverside Properties. On January 1, 2005, AG Properties issued a promissory note to TPR for the amount of US$ 575,000 (the "TPR Note"). The TPR Note was signed by Defendant as President of AG Properties. The TPR Note stipulated a one-year term and provided for interest payable at 15% per annum.

36. In October 2005, Defendant effected a transaction whereby AG Properties' interest in Riverside Properties was reduced from 25.55% to 12.37%. This dilution was apparently the result of Riverside General Partner granting a loan of US$ 2,799,163 to Riverside Properties. This loan was then converted into equity, diluting the interests of all other shareholders in Riverside Properties. As with Defendant's treatment of the AG Properties Loan, *see* ¶¶ 32-33 *supra*, here Defendant used companies that he dominated and controlled to covert loan obligations for his own benefit.

37. On February 1, 2006, the TPR Note was amended to extend the maturity date to December 31, 2006. On December 15, 2006, Defendant executed a resolution on behalf of AG Properties whereby AG Properties, in lieu of fulfilling its payment obligations under the TPR Note,

transferred its interests in Riverside Properties to TPR as per the terms of an agreement attached to the resolution.

38. The agreement attached to the resolution states that: (a) as consideration for extending the maturity date on the TPR Note, AGP Properties has already transferred to TPR US$ 100,000 worth of its interests in Riverside Properties; (b) the financial situation of AG Properties has become questionable and any security given by AG Properties can be deemed a "distressed security;" (c) AG Properties is unable to pay the US$ 1.6 million in outstanding principal and interest on the loan underlying the TPR Note; (d) AG Properties will transfer to TPR its interests in Riverside Properties valued at US$ 1,600,000; and (e) AG Properties will pledge all of its assets to TPR until the amount of US$ 250,000 is paid to TPR.

39. In November 2006, Defendant notified AG Properties, TPR and his personal friend and business ally David Parnes that Riverside General Partner was distributing 50% of its interests in Riverside Properties. At the end of the complex redistribution of interests in Riverside Properties, AG Properties' interests would be reduced from 12.37% to 0%, TPR's interests would increase to 35.59%, and David Parnes would acquire interests totaling 2.58%.

40. Thus, Defendant transformed what was once a simple loan for US$ 575,000 from TPR to AG Properties into a complex and deceptive scheme which, two years after the loan was extended, resulted in AG Properties transferring its interests in Riverside Properties valued at $1.7 million to TPR, and the pledge of all its assets to TPR:



Defendant has claimed that he is unsure whether AG Properties in fact repaid US$ 250,000 to TPR and had its assets returned.

    41.    The cumulative effect of Defendant's manipulation of the ownership structure of Riverside Properties within the space of a little over one year is illustrated by the following diagrams:

**BEFORE: AG PROPERTIES OWNS 25% OF RIVERSIDE PROPERTIES**



**AFTER: AG PROPERTIES' INTERESTS IN RIVERSIDE PROPERTIES ELIMINATED**



42.     This fraudulent scheme allowed TPR to acquire interests in Riverside Properties for a fraction of the actual cost and fully dissipated AG Properties' holdings in Riverside Properties, rendering AG Properties' unable to fulfill its monetary obligations to Plaintiff. Further, the scheme

effectively precluded AG Holdings from receiving any distributions from AG Properties which could have been used to repay the Loan. Finally, the collateral used to secure the Loan, the shares of AG Holdings, was rendered worthless.

The Judgment

43. Based on AG Holdings' failure to make principal and interest payments as required by the Promissory Note and breaches of the Pledge Agreement and Assurance, in December 2008, Plaintiff filed a Third Amended Complaint in Supreme Court of the State of New York, County of New York, under index number 600426/2008 against the Defendant, AG Holdings and AG Real Estate. A copy of the Third Amended Complaint is attached as Exhibit D.

44. On December 22, 2009, the Honorable Jane Solomon granted Plaintiff judgment in the amount of C$ 3,845,750 against AG Holdings (the "Judgment").

45. The Judgment against AG Holdings in the total amount of US$ 4,357,551.99 was filed and entered with the New York County Clerk on December 31, 2009. A copy of the "filed" stamped copy of the Judgment is attached as Exhibit E.

46. There is now due and owing to Plaintiff the sum of US$ 4,357,551.99 plus interest from December 31, 2009.

47. Plaintiff has actively sought to enforce the Judgment against AG Holdings, but has received no payment on the Judgment.

Defendant Is the Alter Ego of the Companies He Has Dominated and Controlled

48. Defendant at all relevant times was a direct or indirect shareholder, director and officer of AG Holdings, AG Properties, AG Real Estate and Riverside General Partner. Defendant has displayed a disregard for corporate formalities since assuming control of these companies; on numerous

occasions, he signed resolutions as the sole director of these companies and executed documents on behalf of all entities in related-party transactions.

49. Defendant dominated and controlled AG Holdings, AG Properties, AG Real Estate and Riverside General Partner, made all decisions on their behalf, and used his power over the corporations to further his own personal interests. AG Holdings' main asset was its ownership of AG Properties, which in turn owned interests in Canadian real estate. Apart from AG Properties' ownership interests in real estate, Defendant has claimed that its primary purpose is servicing Plaintiff's debt. By depriving AG Properties' of its cash and ownership interests, Defendant ensured that AG Holdings would never receive any proceeds from AG Properties and would never be capable of paying back the Loan to Plaintiff.

50. Defendant's negligence towards the corporate formalities of AG Holdings, for example, led to the revocation of the company's Certificate of Registration by the Halifax Registrar of Joint Stock Companies as of August 6, 2008. AG Holdings was not reinstated as an active company authorized to do business in Canada until over seven months later.

51. In addition, Defendant used AG Holdings to engage in questionable business transactions. For example, in September 2005, AG Holdings, 100% of whose shares had been transferred to the Lincoln Trust in July 2005, *see* ¶¶ 29-31 *supra*, entered into a Stock Purchase Agreement with Lerner Manor Trusteeships Ltd. ("Lerner Manor"), an unrelated third party, whereby, *inter alia*, AG Holdings purchased 50% of the outstanding stock of AG Properties and 50% percent of the Lincoln Trust (the "Share Acquisition"), becoming the 100% owner of both entities.

52. The acquisition of the Lincoln Trust, AG Holdings' parent, by AG Holdings made no business sense. Taken together with Defendant's actions in connection with the July 2005 share transfer to avoid personal liability, *see* ¶¶ 29-31 *supra*, this Share Acquisition, at a minimum, further

insulated Defendant from personal liability for the debts of AG Holdings. At the time of the Share Acquisition, upon information and belief, Plaintiff was the only third-party creditor of AG Holdings and remains so as of the date of this Complaint.

53. Defendant has stated that there was a mistake in the recitals of the Share Purchase Agreement and that it should have stated that, at the time of the agreement, AG Real Estate and not AG Holdings was in fact the owner of 50% of the Lincoln Trust. According to Defendant, AG Real Estate was the intended purchaser of the remaining 50% of the Lincoln Trust. Defendant has claimed that the error was immaterial and that the omission of an integral party to an agreement, the missing signatory AG Real Estate, was harmless.

54. Defendant's concession that it was not material whether AG Holdings or AG Real Estate executed the agreement demonstrates his cavalier attitude to corporate and contractual formalities, using the companies that he has dominated and controlled as mere shells, interchangeably and at his convenience, to further his personal interests and fraudulent schemes.

55. Since 2005, Defendant has used the numerous companies under his domination and control to engage in transactions designed to avoid the repayment obligations due to Plaintiff under the Loan. As such, Defendant, for all relevant times, has acted as the alter ego of AG Holdings, AG Properties, AG Real Estate and Riverside General Partner and is personally responsible for their debts, including the Judgment.

## FIRST CAUSE OF ACTION
## FRAUDULENT CONVEYANCE
### (Transfer of Assets)

56. Plaintiff repeats and realleges the allegations in paragraphs 1 through 55 above.

57. Defendant has transferred money out of AG Properties to entities that he has controlled with the intent to hinder, delay, or defraud monetary obligations to Plaintiff.

58.  Defendant's transfer of AG Properties' assets to TPR was without valid consideration, rendering AG Properties and, because it was prohibited from receiving any distributions from AG Properties, AG Holdings unable to pay its monetary obligations to Plaintiff when due.

59.  By reason of the above, Plaintiff requests that any said conveyances from AG Properties to TPR be set aside and annulled to the extent necessary to satisfy Plaintiff's claims.

SECOND CAUSE OF ACTION
FRAUDULENT CONVEYANCE
(Transfer of Assets)

60.  Plaintiff repeats and realleges the allegations in paragraphs 1 through 59 above.

61.  Defendant transferred AG Real Estate's interests in AG Holdings to the Lincoln Trust, an entity that he controls, with the intent to hinder, delay, or defraud monetary obligations to Plaintiff.

62.  Defendant's transfer of AG Real Estate's assets was without valid consideration, rendering AG Real Estate unable to pay its monetary obligations to Plaintiff when due.

63.  By reason of the above, Plaintiff requests that any said conveyances from AG Real Estate to the Lincoln Trust be set aside and annulled to the extent necessary to satisfy Plaintiff's claims.

THIRD CAUSE OF ACTION
FRAUDULENT CONVEYANCE
(Conversion of Loan)

64.  Plaintiff repeats and realleges the allegations in paragraphs 1 through 63 above.

65.  Defendant improperly converted the AG Properties Loan with the intent to hinder, delay, or defraud monetary obligations to Plaintiff.

66. Defendant's conversion of the AG Properties Loan was without valid consideration, rendering AG Holdings unable to receive payments from AG Properties and pay its monetary obligations to Plaintiff when due.

67. By reason of the above, Plaintiff requests that any said conveyances regarding the AG Properties Loan be set aside and annulled to the extent necessary to satisfy Plaintiff's claims.

### FOURTH CAUSE OF ACTION
### FRAUDULENT CONVEYANCE
### (Dilution of Ownership Interests)

68. Plaintiff repeats and realleges the allegations in paragraphs 1 through 67 above.

69. Defendant has diluted AG Properties' ownership interests in Riverside Properties with the intent to hinder, delay, or defraud the monetary obligations to Plaintiff.

70. Defendant's dilution of ownership interests in Riverside Properties was without valid consideration, rendering AG Properties and, because it was prohibited from receiving any distributions from AG Properties, AG Holdings unable to pay its monetary obligations to Plaintiff when due.

71. By reason of the above, Plaintiff requests that any conveyances relating to the said dilution be set aside and annulled to the extent necessary to satisfy Plaintiff's claims.

### FIFTH CAUSE OF ACTION
### FRAUDULENT CONVEYANCE
### (Attorneys' Fees)

72. Plaintiff repeats and realleges the allegations in paragraphs 1 through 71 above.

73. N.Y. Debt. & Cred. Law § 276-a provides for the recovery of attorneys' fees "where such conveyance is found to have been made by the debtor and received by the transferee with actual intent."

74. The transfers and conveyances described above were made by Defendant with actual intent to hinder and defraud Plaintiff.

75. By reason of the above, Plaintiff requests the recovery of its attorneys' fees in connection with this lawsuit.

## SIXTH CAUSE OF ACTION
## ALTER EGO

76. Plaintiff repeats and realleges the allegations in paragraphs 1 through 68 above.

77. Defendant, at all relevant times, has completely dominated AG Holdings, AG Properties, AG Real Estate and Riverside General Partner with respect to the matters alleged above so that these companies effectively had no separate existence apart from Defendant.

78. Upon information and belief, Defendant used his domination of AG Holdings, AG Properties, AG Real Estate and Riverside General Partner to perpetrate a fraud and wrong against Plaintiff by preventing him from collecting the debts owed to him and the resulting Judgment.

79. As a result of such domination and wrongful activity, the corporate veil should be pierced with respect to AG Holdings, AG Properties, AG Real Estate and Riverside General Partner, and Defendant should be held personally liable for their debts to Plaintiff, including for the full amount of the Judgment.

WHEREFORE, Plaintiff demands the following relief:

1. A judgment for damages in an amount to be proven at trial;

2. A judgment setting aside and annulling any fraudulent conveyance to the extent necessary to satisfy Plaintiff's claims;

3. An award of attorney's fees for this action pursuant to N.Y. Debt. & Cred. Law § 276-a;

4. An award of punitive damages as determined by the Court;

5. Pre- and post-judgment interest on all damages; and,

6. Such other and further relief as the Court deems just.

### Demand for Trial by Jury

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

Dated:  New York, New York
        June 14, 2010

COVINGTON & BURLING LLP

By /s/ C. William Phillips
   C. William Phillips
   Joanne Sum-Ping

The New York Times Building
620 Eighth Avenue
New York, New York  10018
(212) 841-1000
cphillips@cov.com
jsumping@cov.com

*Attorneys for Plaintiff Vladimir Gusinski*