UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
VLADIMIR GUSINSKI,

                      Plaintiff,

   - against-

SAGI GENGER,

                      Defendant.
----------------------------------------------------------X
SAGI GENGER,

                      Third-Party Plaintiff,

   -against-

ARIE GENGER, GILAD SHARON, LERNER
MANOR TRUSTEESHIPS, LTD.
and OMNIWAY LIMITED,

                      Third-Party Defendants.
----------------------------------------------------------X

10 Civ. 4506 (SAS) (GWG)

**ANSWER and THIRD-PARTY COMPLAINT**

     For his Answer to the Amended Complaint and for his Third-Party Complaint herein, Defendant and Third-Party Plaintiff SAGI GENGER, through his attorneys, states as follows (paragraph numbers 1-79 respond to paragraphs of the Amended Complaint bearing the same numbers):

     1. Admits that Plaintiff brings this action to obtain injunctive relief and damages, and otherwise denies the allegations of Paragraph 1.

     2. Denies the allegations of Paragraph 2 except admits that Plaintiff obtained a judgment in New York State Court against AG Holdings for US $4,357,551.99.

     3. Denies each and every allegation of Paragraph 3.

1

4. Denies the allegations of Paragraph 4 except admits that Plaintiff's description of this action in that Paragraph is an accurate description.

5. States that he lacks knowledge or information sufficient to form a belief as to whether Plaintiff lent US$ 2.5 million to AG Holdings, and otherwise admits the allegations of Paragraph 5.

6. Admits the allegations of Paragraph 6.

7. Admits the allegations of Paragraph 7.

8. Admits the allegations of Paragraph 8.

9. States that he lacks knowledge or information sufficient to form a belief as to whether Plaintiff loaned US $2.5 million to AG Holdings, but admits on information and belief the existence of a note for that amount and an "Allonge" which purported to convert that note to C$ 3,845,750.

10. Admits the existence of a Promissory Note, a Pledge Agreement and a written Assurance, but states that he lacks knowledge or information sufficient to form a belief as to whether any of these was security for an actual loan to AG Holdings.

11. Admits the allegations of Paragraph 11.

12. Admits the allegations of Paragraph 12.

13. Admits the allegations of Paragraph 13.

14. As to Paragraph 14, admits that Paragraph 4.01 of the Pledge Agreement provides that AG Real Estate shall pay any "Distributions" (a defined term meaning in general the stock of AG Holdings and any payments received by AG Holdings in respect of that stock) to Plaintiff, otherwise denies the allegations of Paragraph 14, and relies on the Pledge Agreement for its contents.

15. Denies that at the time of the Pledge Agreement AG Holdings was the 50% owner of AG Properties but admits that AG Holdings sold 50% of AG Properties thereafter; admits that in 2005 AG Holdings became the 100% owner of AG Properties; and otherwise denies the allegations of Paragraph 15.

16. States that he lacks knowledge or information sufficient to form a belief as to whether there was in fact a "Loan" by Plaintiff to AG Holdings or whether AG Holdings used the proceeds of any such "Loan" to extend a further "AG Properties Loan" to AG Properties, and admits on information and belief the remaining allegations of Paragraph 16.

17. Denies that the Durocher and Lincoln properties were both sold in 2004; admits that after those properties were sold (in late 2004 and in late 2005) AG Properties invested some of the proceeds of the sales in Riverside Properties; admits that Riverside General Partner, a Delaware limited partnership, is the general partner of Riverside Properties; and otherwise denies the allegations of Paragraph 17.

18. Admits the allegations of Paragraph 18.

19. Admits that in 2005 AG Holdings' chief asset was its ownership of AG Properties and that AG Properties had indirect ownership interests in Canadian real estate; states that he lacks knowledge or information sufficient to form a belief as to whether an "AG Properties Loan" was ever made or whether a promissory note from AG Properties to AG Holdings for over US$3.8 million was ever signed; and otherwise denies the allegations of Paragraph 19.

20. Denies that in 2004 or 2005 he ever exercised domination and control over AG Holdings, AG Properties, AG Real Estate or Riverside General Partner; admits that in

either 2004 or 2005 he was named as an officer of each of those entities; admits that he controlled Riverside General Partner subject to fiduciary duties to other investors; and otherwise denies the allegations of Paragraph 20.

21. Denies that he signed the Assurance in 2005; admits that he signed the Assurance in the first quarter of 2006; denies that Paragraph 21 accurately or completely describes the contents of the Assurance; relies on the Assurance for its contents; and otherwise denies the allegations of Paragraph 21.

22. Denies that Paragraph 22 accurately or completely describes the contents of the Assurance, relies on the Assurance for its contents, and otherwise denies the allegations of Paragraph 22.

23. Denies each and every allegation of Paragraph 23.

24. Denies each and every allegation of Paragraph 24.

25. Denies the allegations of Paragraph 25 except admits that AG Properties transferred funds to TPR in 2005 and that Defendant used the words "management services, office space, secretarial support" in describing some of the consideration for the transfer of some of those funds.

26. Denies each and every allegation of Paragraph 26.

27. Denies each and every allegation of Paragraph 27.

28. Denies the allegations of Paragraph 28 except admits that in 2006 he arranged a loan from TPR to Riverside General Partner, which in turn made a loan to AG Holdings in order to enable AG Holdings to make a scheduled interest payment to Plaintiff.

29. Denies the allegations of Paragraph 29 except admits that in approximately July 2005, without Plaintiff's consent, he executed a document transferring the interests of AG

Real Estate in AG Holdings to the Lincoln Trust; relies on that transfer document for its contents; and specifically denies that this transfer defrauded Plaintiff in any respect.

30. Admits that without Plaintiff's consent he executed a document stating that "the 1650 Lincoln Trust undertakes to AG Real Estate Partners LP to honor the terms and undertakings of the $2.5mm note to Mr. Vladimir Gusinski and the pledge agreement coupled with it;" denies that this document had any purpose other than to protect Plaintiff's interests; and otherwise denies the allegations of Paragraph 30.

31. Denies each and every allegation of Paragraph 31.

32. States that he lacks knowledge or information sufficient to form a belief as to whether an "AG Properties Loan" was ever made or whether a promissory note from AG Properties to AG Holdings was ever executed, and otherwise denies the allegations of Paragraph 32.

33. Admits that he signed a "Binding Agreement and Understanding on Debt" dated as of January 1, 2006, which the Complaint refers to as the "Debt Agreement;" relies on that document for its contents; and otherwise denies the allegations of Paragraph 33.

34. Admits that he signed an amendment to the Debt Agreement with the quoted contents preserving Plaintiff's rights, and otherwise denies each and every allegation of Paragraph 34.

35. Denies the allegations of Paragraph 35 except admits that Defendant, as president of AG Properties, signed a promissory note to TPR (the "TPR Note") dated January 1, 2005 for a one-year term in the amount of US$ 575,000 at 15% interest.

36. Admits that in approximately October 2005 Riverside General Partner loaned US$ 2,799,163 to Riverside Properties which was later converted into equity by a partnership vote, and otherwise denies the allegations of Paragraph 36.

37. Admits the allegations of Paragraph 37.

38. Admits that a form of agreement was attached to the AG Properties resolution of December 15, 2006, relies on that document for its contents, and otherwise denies the allegations of Paragraph 38.

39. Denies the allegations of Paragraph 39 except admits that in November 2006 Defendant communicated with AG Properties, TPR and David Parnes about Riverside General Partner and Riverside Properties and relies on that communication for its contents.

40. Denies each and every allegation of Paragraph 40.

41. Denies each and every allegation of Paragraph 41.

42. Denies each and every allegation of Paragraph 42.

43. Admits that Plaintiff filed a Third Amended Complaint (as described in Paragraph 43) in Supreme Court of the State of New York, County of New York, and otherwise denies the allegations of Paragraph 43.

44. Admits the allegations of Paragraph 44.

45. Admits the allegations of Paragraph 45.

46. States that he lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 46.

47. States that he lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 47 except admits on information and belief that Plaintiff has

taken possession of AG Holdings and that Plaintiff therefore now owns AG Holdings and beneficially owns all its assets.

48. Denies the allegations of Paragraph 48 except admits that on occasion Defendant has signed resolutions and executed documents on behalf of AG Holdings, AG Properties, AG Real Estate and Riverside General Partner.

49. Denies the allegations of Paragraph 49 except admits that at various times AG Holdings' main asset was its ownership of varying interests in AG Properties, which in turn, for a time, owned interests in Canadian real estate.

50. Denies the allegations of Paragraph 50 except admits that for a period of months beginning in August 2008 AG Holdings' Certificate of Registration was revoked and later reinstated.

51. Denies the allegations of Paragraph 51 except admits that in September 2005 AG Holdings entered into a transaction with Lerner Manor Trusteeships Ltd. ("Lerner Manor") the terms of which are reflected in a written Stock Purchase Agreement except that the recitals to the Stock Purchase agreement were in error with respect to the purchase of an interest in the Lincoln Trust as set forth in Paragraph 53 below; admits that thereafter AG Holdings had a 100% beneficial interest in AG Properties, subject to Plaintiff's interests; and refers to that Stock Purchase Agreement for a full description of its terms.

52. Denies the allegations of Paragraph 52 except admits on information and belief, based upon records that Defendant has seen, that at the time of the September 2005 Stock Purchase Agreement Plaintiff held a promissory note from AG Holdings.

53. Admits on information and belief, based on records that Defendant has seen, that at the time of the Share Acquisition AG Real Estate owned 50% of the Lincoln Trust and was the intended purchaser of the remaining 50%, and that the recitals of the Share Purchase Agreement were therefore erroneous with respect to the identity of the purchaser of the Lincoln Trust interest, and otherwise denies the allegations of Paragraph 53.

54. Denies each and every allegation of Paragraph 54.

55. Denies each and every allegation of Paragraph 55.

56. Repeats and realleges his responses to Paragraphs 1 through 55.

57. Denies each and every allegation of Paragraph 57.

58. Denies each and every allegation of Paragraph 58.

59. Paragraph 59 consists of a request for relief and therefore requires no response.

60. Repeats and realleges his responses to Paragraphs 1 through 59.

61. Denies each and every allegation of Paragraph 61.

62. Denies each and every allegation of Paragraph 62.

63. Paragraph 63 consists of a request for relief and therefore requires no response.

64. Repeats and realleges his responses to Paragraphs 1 through 63.

65. Denies each and every allegation of Paragraph 65.

66. Denies each and every allegation of Paragraph 66.

67. Paragraph 67 consists of a request for relief and therefore requires no response.

68. Repeats and realleges his responses to Paragraphs 1 through 67.

69. Denies each and every allegation of Paragraph 69.

70. Denies each and every allegation of Paragraph 70.

71. Paragraph 71 consists of a request for relief and therefore requires no response.

72. Repeats and realleges his responses to Paragraphs 1 through 71.

73. Admits that N.Y. Debt. & Cred. Law § 276-a contains the quoted language; beyond that, no response is required.

74. Denies each and every allegation of Paragraph 74.

75. Paragraph 75 consists of a request for relief and therefore requires no response.

76. Repeats and realleges his responses to Paragraphs 1 through 75.

77. Denies each and every allegation of Paragraph 77.

78. Denies each and every allegation of Paragraph 78.

79. Paragraph 79 consists of a request for relief and therefore requires no response.

### FIRST AFFIRMATIVE DEFENSE
(Failure to State a Claim)

80. The Amended Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
(Satisfaction)

81. Any debt owing to Plaintiff from AG Holdings has been satisfied under applicable Canadian law since Plaintiff has taken possession of the stock of AG Holdings.

### THIRD AFFIRMATIVE DEFENSE
(Failure to Join Required Parties)

82. Plaintiff has failed to join as parties AG Real Estate, AG Holdings, AG Properties, and Riverside General Partner (all identified in the Amended Complaint as transferors of alleged fraudulent conveyances and conversions). The joinder of those persons as parties would not deprive the Court of subject-matter jurisdiction.

83. (a) In the absence of those persons the Court cannot accord complete relief among the existing parties, and (b) some or all of them claim an interest in the subject-matter of

the action – *i.e.,* a right to be restored to possession of assets that were allegedly fraudulently conveyed – and the absence of those persons from this Court would leave Defendant subject to a substantial risk of inconsistent obligations if fraudulent conveyances were found to have taken place.

84. Plaintiff has failed to join as parties TPR Investment Associates, Inc., the Lincoln Trust, and Riverside Properties (all identified in the Amended Complaint as transferees of assets that were allegedly fraudulently conveyed or converted). The joinder of those persons as parties would not deprive the Court of subject-matter jurisdiction.

85. In the absence of those persons the Court cannot accord complete relief among the existing parties because of the existence of competing claims to the assets in question.

## FOURTH AFFIRMATIVE DEFENSE
(Unclean Hands)

86. Plaintiff seeks equitable relief from this Court but is not entitled to such relief because he has unclean hands.

## FIFTH AFFIRMATIVE DEFENSE AND THIRD-PARTY COMPLAINT

Defendant and Third-Party Plaintiff Sagi Genger ("Sagi"), by his attorneys, alleges as follows for his third-party complaint against Third-Party Defendants Arie Genger, Gilad Sharon, Lerner Manor Trusteeships Ltd. and Omniway Limited (all factual allegations are on information and belief):

### Nature of the Claims

87. In the First and Sixth Causes of Action in the underlying action Plaintiff seeks to hold Sagi personally liable as the alleged *alter ego* of AG Properties for alleged fraudulent conveyances through which assets were transferred out of AG Properties to TPR. According to Plaintiff, AG Properties could and should instead have upstreamed

those assets to its parent AG Holdings in order that AG Holdings could pay its alleged debt to Plaintiff.

88. Sagi denies all liability on those causes of action, and states that he lacks knowledge or information sufficient to form a belief as to whether AG Holdings actually ever had any such debt to Plaintiff as alleged in the Amended Complaint.

89. However, if it is found that (a) there was such a debt, (b) AG Properties made fraudulent conveyances to TPR as alleged which frustrated the payment of AG Holdings' debt to Plaintiff, (c) Sagi was the *alter ego* of AG Properties at the time of the transfers in question, and (d) Sagi is personally liable for such fraudulent conveyances by AG Properties, Sagi brings these claims for indemnity and contribution against persons and entities that acted together to strip AG Properties of assets in September 2005.

**The Third-Party Defendants**

90. Arie Genger ("Arie") is a resident of Florida and was the sole director and controlling person of AG Properties from 2001 through the time in 2005 when the operative events referred to in this Third-Party Complaint occurred.

91. Gilad Sharon ("Sharon") is a citizen and resident of Israel and was at all relevant times the sole beneficial owner of both Third-Party Defendant Lerner Manor Trusteeships Ltd. and Third-Party Defendant Omniway Limited.

92. Lerner Manor Trusteeships Ltd. ("Lerner Manor") is, on information and belief, a limited liability company incorporated under the laws of Israel with its principal place of business in Tel Aviv, Israel.

93. Omniway Limited ("Omniway") is, on information and belief, a business corporation incorporated under the laws of Cyprus.

11

**Factual Background**

94. AG Properties was incorporated in Nova Scotia on or about August 17, 2001.

95. In 2001, AG Holdings (also a Nova Scotia corporation) acquired all of the shares of stock in AG Properties.

96. Arie became the sole director of both AG Properties and AG Holdings. He continued to act as such, and directed all relevant activities of both AG Properties and AG Holdings, during the entire time period covered by this Third-Party Complaint.

97. Through subsidiaries, AG Properties acquired the entire beneficial interest in two pieces of real property in Montreal, Canada (the "Durocher" and "Lincoln" properties) in 2001 and early 2002. Each of those properties was acquired in part through mortgage financing provided by banks.

98. TPR, a Delaware corporation beneficially owned at the time by Genger family interests including Sagi and his mother and his sister as well as Arie, provided to AG Holdings and its direct and remote subsidiaries most of the remainder of the equity capital and mezzanine debt financing necessary to consummate those property acquisitions.

99. Arie and Sharon agreed that Sharon (through Omniway) would participate in these Canadian real estate investments as a 50% equity owner of AG Properties alongside AG Holdings (which had been financed primarily by TPR). The agreed arrangement was that Sharon would purchase 50% of AG Properties' stock for US$1,250,000 in the form of a promissory note from Omniway. Such a note (dated February 6, 2002 and bearing interest at 6½% per annum) was prepared, executed by Omniway and delivered to AG Properties.

100.     AG Properties, acting through Arie, accepted Omniway's subscription to the stock of AG Properties.

101.     In approximately April 2003, for reasons best known to them and not disclosed to others, Arie and Sharon agreed to substitute Lerner Manor for Omniway as a 50% stockholder of AG Properties.  Arie and Sharon acted together to prepare phony papers that were backdated to reflect a stock subscription by Lerner Manor to 100 shares (50%) of AG Properties' stock as of February 6, 2002.  In derogation of the legitimate equity interests of TPR, which had provided financing for AG Holdings and its subsidiaries, Arie and Sharon simply agreed to disregard the Omniway note for US $1,250,000 and substitute a bargain-basement subscription price of US$25,000 for 50% of the stock of AG Properties.

102.     In approximately May 2004, At Arie's direction – and for a stated consideration of $10 apiece – Lerner Manor was also substituted (retroactively to 2002) as a 50% unitholder in both the Lincoln Trust and the Durocher Trust, which in 2002 had acquired beneficial ownership interests in the Durocher and Lincoln properties.  The stated ground for this, in each case, was that Lerner Manor had been "*erroneously* omitted from [the schedule of beneficial owners] previously attached to the Declaration of Trust." (Emphasis added.)

103.     The "omission" of Lerner Manor from the 2002 Declarations of Trust was not "erroneous" at all, and the statement that Lerner Manor had been "erroneously" omitted from those papers was a deliberately false statement.

104.     In addition, Lerner Manor's supposed subscription to AG Properties stock in 2002, papered up with backdated documents, was equally false. *Lerner Manor did not even exist in February 2002.*  It was not formed until much later.

105.     The intended design and practical effect of these paper transactions was to funnel proceeds from the Durocher and Lincoln real estate investments to Gilad Sharon in derogation of the rights of others including TPR, for reasons known only to Arie and Sharon.

106.     Sagi had no contemporaneous knowledge of the facts set forth in Paragraphs 99-105 above.

107.     The Durocher and Lincoln properties were sold at a profit, respectively, in late 2004 and in approximately August 2005, and AG Properties or its subsidiaries received the bulk of the proceeds.

108.     At Arie's direction, and in collusion with Sharon, AG Properties upstreamed US$1,000,000 of those proceeds to its 50% parent AG Holdings, which used that money to "purchase" Lerner Manor's purported stock holding in AG Properties and its purported interests in the Lincoln Trust and the Durocher Trust – all of which Lerner Manor had acquired without any semblance of adequate consideration and all of which were papered up with phony documentation.

109.     TPR, which had in fact provided primary financing for the Lincoln and Durocher properties, had every legitimate right to compensation upon the sale of those properties.

**Relief Requested**

If Sagi (as the supposed *alter ego* of AG Properties) is held to be personally liable to Plaintiff with respect to transfers of assets from AG Properties to TPR, Sagi demands indemnification and/or contribution from the Third-Party Defendants and each of them for the reasons stated above.

Dated: White Plains, New York
   August 6, 2010

              YANKWITT & McGUIRE, LLP


              By___/s/_____
                Harold F. McGuire, Jr.
              140 Grand Street, Penthouse 2
              White Plains, New York 10601
              (914) 686-1500
              hmcguire@yankwitt.com

              *Attorneys for Defendant and Third-Party*
              *Plaintiff Sagi Genger*