UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VLADIMIR GUSINSKI,

                Plaintiff,

- against-

SAGI GENGER,

                Defendant.
------------------------------------------------------------X
SAGI GENGER and TPR INVESTMENT
ASSOCIATES, INC., on behalf of AG
PROPERTIES CO.,

                Third-Party Plaintiffs,

-against-

GILAD SHARON, LERNER
MANOR TRUSTEESHIPS, LTD.
and OMNIWAY LIMITED,

                Third-Party Defendants.
------------------------------------------------------------X

10 Civ. 4506 (SAS) (GWG)

**AMENDED ANSWER AND
THIRD AMENDED
THIRD-PARTY COMPLAINT**

For the Amended Answer and the Third Amended Third-Party Complaint, Defendant and Third-Party Plaintiff SAGI GENGER and Third-Party Plaintiff TPR INVESTMENT ASSOCIATES, INC. ("TPR"), on behalf of AG PROPERTIES CO., through their attorneys, state as follows:

    1.    Admits that Plaintiff brings this action to obtain injunctive relief and damages, and otherwise denies the allegations of Paragraph 1.

    2.    Denies the allegations of Paragraph 2 except admits that Plaintiff loaned US $2.5 million to AG Holdings in 2001 and obtained a judgment in New York State Court against AG Holdings in December 2009 for US $4,357,551.99.

    3.    Denies each and every allegation of Paragraph 3.

    4.    Denies the allegations of Paragraph 4 except admits that Plaintiff's description of this

action in that Paragraph is an accurate description.

5. Admits the allegations of Paragraph 5.

6. Admits the allegations of Paragraph 6.

7. Admits the allegations of Paragraph 7.

8. Admits the allegations of Paragraph 8.

9. Admits on information and belief that Plaintiff loaned US $2.5 million to AG Holdings, and admits on information and belief the existence of a note for that amount dated July 24, 2001 and an "Allonge" which purported to convert that note to C $3,845,750, but denies that he had contemporaneous knowledge of the "Allonge."

10. Admits the existence of a Promissory Note, a Pledge Agreement and a written Assurance, and admits on information and belief that these were security for a loan to AG Holdings.

11. Admits the allegations of Paragraph 11.

12. Admits the allegations of Paragraph 12.

13. Admits the allegations of Paragraph 13.

14. As to Paragraph 14, admits that Paragraph 4.01 of the Pledge Agreement provides that AG Real Estate shall pay any "Distributions" (a defined term meaning in general the stock of AG Holdings and any payments received by AG Holdings in respect of that stock) to Plaintiff, otherwise denies the allegations of Paragraph 14, and relies on the Pledge Agreement for its contents.

15. Denies that at the time of the Pledge Agreement AG Holdings was the 50% owner of AG Properties but admits that AG Holdings sold 50% of AG Properties thereafter; admits that in 2005 AG Holdings became the 100% owner of AG Properties; and otherwise denies the allegations of Paragraph 15.

16. Admits on information and belief that: (a) there was a "Loan" by Plaintiff to AG

Holdings, (b) AG Holdings used some or all of the proceeds of that "Loan" to extend a further "AG Properties Loan" to AG Properties, (c) the "AG Properties Loan" was for the primary purpose of providing financing to purchase real estate in Montreal, Canada, (d) that subsidiaries of AG Properties purchased two properties, located at 3455 Rue Durocher and 1650 Lincoln Avenue, which were subsequently resold, and (e) that some of the proceeds of those sales, after the payment of mortgage loans and applicable expenses, were distributed to AG Properties. Denies the remaining allegations of Paragraph 16.

17. Denies that the Durocher and Lincoln properties were both sold in 2004; admits that those properties were sold in late 2004 and in late 2005; admits that AG Properties invested some of the net proceeds of those sales in Riverside Properties; admits that Riverside General Partner, a Delaware limited partnership, is the general partner of Riverside Properties; and otherwise denies the allegations of Paragraph 17.

18. Admits the allegations of Paragraph 18.

19. Admits that in 2005 AG Holdings' chief asset was its ownership of AG Properties and that AG Properties had indirect ownership interests in Canadian real estate; admits on information and belief that an "AG Properties Loan" was made and that a promissory note from AG Properties to AG Holdings for over US$3.8 million was signed; and otherwise denies the allegations of Paragraph 19 and respectfully refers to the loan documents for their terms and conditions.

20. Denies that in 2004 or 2005 he ever exercised domination and control over AG Holdings, AG Properties, AG Real Estate or Riverside General Partner; admits that in either 2004 or 2005 he was named as an officer of each of those entities; admits that he controlled Riverside General Partner subject to fiduciary duties to other investors; and otherwise denies the allegations of Paragraph 20.

21. Denies that he signed the Assurance in 2005; admits that he signed the Assurance in the

3

first quarter of 2006; denies that Paragraph 21 accurately or completely describes the contents of the Assurance; relies on the Assurance for its contents; and otherwise denies the allegations of Paragraph 21.

22. Denies that Paragraph 22 accurately or completely describes the contents of the Assurance, relies on the Assurance for its contents, and otherwise denies the allegations of Paragraph 22.

23. Admits that AG Holdings was an obligor to Plaintiff under the Promissory Note and denies the remaining allegations of Paragraph 23.

24. Denies each and every allegation of Paragraph 24.

25. Denies the allegations of Paragraph 25 except admits that AG Properties transferred funds to TPR in 2005 and that Defendant used the words "management services, office space, secretarial support" in describing some of the consideration for the transfer of some of those funds.

26. Denies each and every allegation of Paragraph 26.

27. Denies each and every allegation of Paragraph 27.

28. Denies the allegations of Paragraph 28 except admits that in 2006 he arranged a loan from TPR to Riverside General Partner, which in turn made a loan to AG Holdings in order to enable AG Holdings to make a scheduled interest payment to Plaintiff.

29. Denies the allegations of Paragraph 29 except admits that in approximately July 2005, without Plaintiff's consent, he executed a document transferring the interests of AG Real Estate in AG Holdings to the Lincoln Trust; relies on that transfer document for its contents; and specifically denies that this transfer defrauded Plaintiff in any respect.

30. Admits that without Plaintiff's consent he executed a document stating that "the 1650 Lincoln Trust undertakes to AG Real Estate Partners LP to honor the terms and undertakings of the $2.5mm note to Mr. Vladimir Gusinski and the pledge agreement coupled with it;" denies that this

4

x

document had any purpose other than to protect Plaintiff's interests; and otherwise denies the allegations of Paragraph 30.

31. Denies each and every allegation of Paragraph 31.

32. Admits on information and belief that an "AG Properties Loan" was made and that a promissory note from AG Properties to AG Holdings was executed, and otherwise denies the allegations of Paragraph 32.

33. Admits that he signed a "Binding Agreement and Understanding on Debt" dated as of January 1, 2006, which the Complaint refers to as the "Debt Agreement;" relies on that document for its contents; and otherwise denies the allegations of Paragraph 33.

34. Admits that he signed an amendment to the Debt Agreement with the quoted contents preserving Plaintiff's rights, and otherwise denies each and every allegation of Paragraph 34.

35. Denies the allegations of Paragraph 35 except admits that Defendant, as president of AG Properties, signed a promissory note to TPR (the "TPR Note") dated January 1, 2005 for a one-year term in the amount of US $575,000 at 15% interest.

36. Admits that in approximately October 2005 Riverside General Partner loaned US $2,799,163 to Riverside Properties which was later converted into equity by a partnership vote, and otherwise denies the allegations of Paragraph 36.

37. Admits the allegations of Paragraph 37.

38. Admits that a form of agreement was attached to the AG Properties resolution of December 15, 2006, relies on that document for its contents, and otherwise denies the allegations of Paragraph 38.

39. Denies the allegations of Paragraph 39 except admits that in November 2006 Defendant communicated with AG Properties, TPR and David Parnes about Riverside General Partner and

5

Riverside Properties and relies on that communication for its contents.

40. Denies each and every allegation of Paragraph 40.

41. Denies each and every allegation of Paragraph 41.

42. Denies each and every allegation of Paragraph 42.

43. Admits that Plaintiff filed a Third Amended Complaint (as described in Paragraph 43 and attached to the Amended Complaint as Exhibit D) in Supreme Court of the State of New York, County of New York, and otherwise denies the allegations of Paragraph 43.

44. Admits the allegations of Paragraph 44.

45. Admits the allegations of Paragraph 45.

46. States that he lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 46.

47. States that he lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 47 except admits on information and belief that Plaintiff has taken possession of AG Holdings and that Plaintiff therefore now owns AG Holdings and beneficially owns all its assets.

48. Denies the allegations of Paragraph 48 except admits that on occasion Defendant has signed resolutions and executed documents on behalf of AG Holdings, AG Properties, AG Real Estate and Riverside General Partner.

49. Denies the allegations of Paragraph 49 except admits that at various times AG Holdings' main asset was its ownership of varying interests in AG Properties, which in turn, for a time, owned interests in Canadian real estate.

50. Denies the allegations of Paragraph 50 except admits that for a period of months beginning in August 2008 AG Holdings' Certificate of Registration was revoked and later reinstated.

51. Denies the allegations of Paragraph 51 except admits that in September 2005 AG

6

Holdings entered into a transaction with Lerner Manor Trusteeships Ltd. ("Lerner Manor") the terms of which are reflected in a written Stock Purchase Agreement except that the recitals to the Stock Purchase agreement were in error with respect to the purchase of an interest in the Lincoln Trust as set forth in Paragraph 53 below; admits that thereafter AG Holdings had a 100% beneficial interest in AG Properties, subject to Plaintiff's interests; and refers to that Stock Purchase Agreement for a full description of its terms.

52. Denies the allegations of Paragraph 52 except admits on information and belief, based upon records that Defendant has seen, that at the time of the September 2005 Stock Purchase Agreement Plaintiff held a promissory note from AG Holdings.

53. Admits on information and belief, based on records that Defendant has seen, that at the time of the Share Acquisition AG Real Estate owned 50% of the Lincoln Trust and was the intended purchaser of the remaining 50%, and that the recitals of the Share Purchase Agreement were therefore erroneous with respect to the identity of the purchaser of the Lincoln Trust interest, and otherwise denies the allegations of Paragraph 53.

54. Denies each and every allegation of Paragraph 54.

55. Denies each and every allegation of Paragraph 55.

56. Repeats and realleges his responses to Paragraphs 1 through 55.

57. Denies each and every allegation of Paragraph 57.

58. Denies each and every allegation of Paragraph 58.

59. Paragraph 59 consists of a request for relief and therefore requires no response.

60. Repeats and realleges his responses to Paragraphs 1 through 59.

61. Denies each and every allegation of Paragraph 61.

62. Denies each and every allegation of Paragraph 62.

7

63. Paragraph 63 consists of a request for relief and therefore requires no response.

64. Repeats and realleges his responses to Paragraphs 1 through 63.

65. Denies each and every allegation of Paragraph 65.

66. Denies each and every allegation of Paragraph 66.

67. Paragraph 67 consists of a request for relief and therefore requires no response.

68. Repeats and realleges his responses to Paragraphs 1 through 67.

69. Denies each and every allegation of Paragraph 69.

70. Denies each and every allegation of Paragraph 70.

71. Paragraph 71 consists of a request for relief and therefore requires no response.

72. Repeats and realleges his responses to Paragraphs 1 through 71.

73. Admits that N.Y. Debt. & Cred. Law § 276-a contains the quoted language; beyond that, no response is required.

74. Denies each and every allegation of Paragraph 74.

75. Paragraph 75 consists of a request for relief and therefore requires no response.

76. Repeats and realleges his responses to Paragraphs 1 through 75.

77. Denies each and every allegation of Paragraph 77.

78. Denies each and every allegation of Paragraph 78.

79. Paragraph 79 consists of a request for relief and therefore requires no response.

**FIRST AFFIRMATIVE DEFENSE**
**(Failure to State a Claim)**

80. Each "cause of action" in the Amended Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Satisfaction)

81. Any debt owing to Plaintiff from AG Holdings has been satisfied under applicable Canadian law since Plaintiff has taken possession of the stock of AG Holdings.

## THIRD AFFIRMATIVE DEFENSE
### (Failure to Join Required Parties)

82. Plaintiff has failed to join as parties AG Real Estate, AG Holdings, AG Properties, and Riverside General Partner (all identified in the Amended Complaint as transferors of alleged fraudulent conveyances and conversions). The joinder of those persons as parties would not deprive the Court of subject-matter jurisdiction.

83. (a) In the absence of those persons the Court cannot accord complete relief among the existing parties, and (b) some or all of them claim an interest in the subject-matter of the action – *i.e.*, a right to be restored to possession of assets that were allegedly fraudulently conveyed – and the absence of those persons from this Court would leave Defendant subject to a substantial risk of inconsistent obligations if fraudulent conveyances were found to have taken place.

84. Plaintiff has failed to join as parties TPR Investment Associates, Inc., the Lincoln Trust, and Riverside Properties (all identified in the Amended Complaint as transferees of assets that were allegedly fraudulently conveyed or converted). The joinder of those persons as parties would not deprive the Court of subject-matter jurisdiction.

85. In the absence of those persons the Court cannot accord complete relief among the existing parties because of the existence of competing claims to the assets in question.

## FOURTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

86. Plaintiff seeks equitable relief from this Court but is not entitled to such relief because he has unclean hands.

9

## FIFTH AFFIRMATIVE DEFENSE AND THIRD-PARTY COMPLAINT

For the fifth affirmative defense and the third amended third-party complaint against Third-Party Defendants Gilad Sharon, Lerner Manor Trusteeships Ltd. and Omniway Limited (all factual allegations are on information and belief), Sagi and TPR allege as follows:

### Nature of the Claims

87. In the First and Sixth Causes of Action in the underlying action Plaintiff seeks to hold Sagi personally liable as the alleged *alter ego* of AG Properties for alleged fraudulent conveyances through which assets were transferred out of AG Properties to TPR. According to Plaintiff, AG Properties could and should instead have upstreamed those assets to its parent AG Holdings in order that AG Holdings could pay its alleged debt to Plaintiff.

88. Sagi denies all liability on those causes of action.

89. For various reasons, as stated in more detail below, TPR was entitled to whatever reimbursement and compensation it received from AG Properties and its subsidiaries.

90. However, on or around May 6, 2011, Third-Party Plaintiffs settled the primary lawsuit with Plaintiff Vladimir Gusinsky for a sum of money (the "Settlement Amount"). For the reasons alleged herein, Third-Party Plaintiffs seek contribution in the amount of at least 50% of the Settlement Amount (the "Contribution Amount") from the Third-Party Defendants.

91. TPR, on behalf of AG Properties, brings its claim against Third-Party Defendants seeking payment of a promissory note, dated February 6, 2002, wherein Third-Party Defendant Omniway Limited promised to pay AG Properties US $1,250,000. To date, no payments have been made to AG Properties under the terms of said note.

10

**The Third-Party Defendants**

92. Gilad Sharon ("Sharon") is a citizen and resident of Israel and was at all relevant times the sole beneficial owner of Third-Party Defendant Omniway Limited.

93. Lerner Manor Trusteeships Ltd. ("Lerner Manor") is, on information and belief, a limited liability company incorporated under the laws of Israel with its principal place of business in Tel Aviv, Israel. Lerner Manor acted as Sharon's nominee protecting Sharon's personal interest in the transactions set forth below.

94. Omniway Limited ("Omniway") is, on information and belief, a dissolved business corporation that was incorporated under the laws of Cyprus.

**Factual Background**

95. AG Properties was incorporated in Nova Scotia on or about August 17, 2001.

96. In 2001, AG Holdings (also a Nova Scotia corporation) acquired all of the shares of stock in AG Properties.

97. Arie Genger ("Arie") was the sole director and controlling person of AG Properties from 2001 through the time in 2005 when the operative events referred to in this Third-Party Complaint occurred.

98. Arie became the sole director of both AG Properties and AG Holdings in 2001. He continued to act as such, and directed all relevant activities of both AG Properties and AG Holdings, during the entire time period covered by this Third-Party Complaint.

99. Through subsidiaries, AG Properties acquired the entire beneficial interest in two pieces of real property in Montreal, Canada (the "Durocher" and "Lincoln" properties) in 2001 and early 2002. The acquisition of each of those properties was financed in large part through mortgage financing provided by banks.

11

100. TPR, a Delaware corporation beneficially owned at the time by Genger family interests including Sagi and his mother and his sister as well as Arie, provided to AG Holdings and its direct and remote subsidiaries most of the remainder of the mezzanine debt financing necessary to consummate those property acquisitions, in the amount of approximately US$1,350,000.

101. Arie and Sharon agreed that Sharon (through Omniway) would participate in these Canadian real estate investments as a 50% equity owner of AG Properties alongside AG Holdings (which had been financed in major part by TPR). The agreed arrangement was that Sharon would purchase 50% of AG Properties' stock for US$1,250,000 in the form of a promissory note from Omniway. The note was executed by Omniway on February 6, 2002. The Omniway Note is attached as Exhibit A.

102. The Omniway Note provides that Omniway would repay the principal sum in three annual installments of $125,000 each on July 24, 2008, July 24, 2009 and July 24, 2010 and that the balance of the outstanding principal sum would be due and payable on July 24, 2011. It further states that Omniway was obligated to pay interest of 6½% annually on July 24 in each year beginning July 24, 2003.

103. AG Properties, acting through Arie, accepted Omniway's subscription to 50% of the stock of AG Properties.

104. In approximately April 2003, for reasons best known to them and not disclosed to others, Arie and Sharon agreed to substitute Lerner Manor ("as trustee for and on behalf of Mr. Gilad Sharon") for Omniway as a 50% stockholder of AG Properties. However, neither the Omniway Note nor the Omniway stock subscription were ever satisfied or cancelled. Instead, Arie and Sharon acted together to prepare phony papers that were backdated to reflect a stock subscription by Lerner Manor to 100 shares (50%) of AG Properties' stock as of February 6, 2002. In derogation of the legitimate interests of AG

12

Holdings, AG Properties and Plaintiff, Arie and Sharon simply agreed, in secret, to disregard the Omniway note for US $1,250,000 and substitute a bargain-basement subscription price of US $25,000 for 50% of the stock of AG Properties.

105. In approximately May 2004, at Arie's direction – and for a stated consideration of $10 apiece – Lerner Manor was also substituted (retroactively to 2002) as a 50% unit holder in both the Lincoln Trust and the Durocher Trust, which in 2002 had acquired beneficial ownership interests in the Lincoln and Durocher properties. The stated ground for this, in each case, was that Lerner Manor had been "*erroneously* omitted from [the schedule of beneficial owners] previously attached to the Declaration of Trust." (Emphasis added.)

106. The "omission" of Lerner Manor from the 2002 Declarations of Trust was not "erroneous" at all, and the statement that Lerner Manor had been "erroneously" omitted from those papers was a deliberately false statement.

107. In addition, Lerner Manor's supposed subscription to AG Properties stock in February 2002 – papered up with backdated documents – was equally false. *Lerner Manor did not even exist in February 2002.* It was not formed until much later.

108. The intended design and practical effect of these paper transactions was, for reasons known only to Arie and Sharon, to funnel proceeds from the Durocher and Lincoln real estate investments to Third-Party Defendant Sharon in disregard of the Omniway Note (which should have been paid as a prerequisite to any transfer of funds to Sharon or any entity he controlled) for inadequate consideration and in derogation of the rights of others including Plaintiff, AG Holdings, AG Properties and TPR.

109. Omniway has not made any payments of principal or interest due under the Omniway Note to AG Properties.

110. Sharon eventually dissolved Omniway and accordingly became (and is now) personally liable for its debts, including the Omniway Note.

111. Sharon has not made any payments of principal or interest due under the Omniway Note to AG Properties.

112. Sagi had no contemporaneous knowledge of the facts set forth in Paragraphs 99-111 above. In particular, he had no knowledge of the Omniway Note, and therefore believed at all relevant times that Lerner Manor was the legitimate 50% stockholder of AG Properties.

113. The Durocher and Lincoln properties were sold at a profit, respectively, in late 2004 and in approximately August 2005, and AG Properties or its subsidiaries received the bulk of the proceeds after the repayment of mortgage loans and applicable expenses.

114. At Arie's direction, and in collusion with Sharon, AG Properties upstreamed US $1,000,000 of those proceeds to its 50% parent AG Holdings, which used that money to "purchase" from Lerner Manor the purported 50% stock holding of Lerner Manor in AG Properties as well as Lerner Manor's purported interests in the Lincoln Trust and the Durocher Trust – all of which Lerner Manor had purportedly acquired without any semblance of adequate consideration, and all of which had been papered up with phony documentation. Payment was made directly to Sharon.

115. TPR, which had in fact provided management services and primary financing for AG Properties as well as the Lincoln and Durocher properties, had every legitimate right to compensation upon the sale of those properties.

116. Both Arie and Sharon (acting individually and on behalf of Lerner Manor and Omniway) intended that the transfers to Sharon referred to above would – and they did – delay and defeat the interests of AG Properties and its creditors including AG Holdings, which in turn was the obligor on the loan to Plaintiff.

14

117. On January 1, 2007, TPR entered into an agreement with AG Holdings pursuant to which TPR agreed to pay the interest due on Plaintiff's Loan on July 24, 2007. In consideration for TPR's agreement to make the July 24, 2007 interest payment to Plaintiff, AG Holdings represented that it has claims against former "affiliates, officers and directors" of AG Properties, its fully owned subsidiary. This agreement is attached as Exhibit B.

118. The January 1, 2007 agreement provides, in pertinent part, that:

> TPR may, in its sole judgment, decide to institute enforcement actions against certain or all potential defendants of [AG Properties], as it deems fit…TPR shall have the exclusive right to bring suit to enforce the alleged wrongdoings to [AG Properties]…[AG Holdings] and [AG Properties] grant TPR a power of attorney allowing TPR to…(ii) bring an action directly in [AG Properties/AG Holding's] name…

## FIRST CAUSE OF ACTION
## CONTRIBUTION AND/OR INDEMNIFICATION

119. Third Party Plaintiffs repeat and reallege the allegations in paragraphs 87 through 118 above.

120. Third-Party Plaintiffs seek to have the Third-Party Defendants pay the Contribution Amount as the amounts they withdrew from AG Properties and related entities contributed to the inability of AG Properties to make timely payments on its debt to Plaintiff.

## SECOND CAUSE OF ACTION
## ENFORCEMENT OF OMNIWAY NOTE

121. Third Party Plaintiffs repeat and reallege the allegations in paragraphs 87 through 120 above.

122. The Omniway Note provides that Omniway promised to pay AG Properties US $1,250,000, plus interest.

123. Omniway did not make any payments to AG Properties towards satisfying the

Case 1:10-cv-04506-SAS-GWG Document 106-1 Filed 04/26/12 Page 16 of 16

Omniway Note.

124. Sharon dissolved Omniway and became liable for its debts.

125. Sharon has not made any payments to AG Properties towards satisfying the Omniway Note.

126. AG Properties agreed to allow TPR to bring suit to enforce any alleged wrongdoings against it.

127. By reason of the above, TPR demands that Omniway and Sharon pay all amounts due and owing to AG Properties under the terms of the Omniway Note.

Dated: New York, New York
November 15, 2011

DUANE MORRIS LLP

By: _____
John Dellaportas
Evangelos Michailidis
1540 Broadway
New York, New York 10036
Direct: (212) 692-1012
Fax: (212) 202-4866
dellajo@duanemorris.com
emichailidis@duanemorris.com

*Attorneys for Defendant and
Third-Party Plaintiff Sagi Genger and Third-Party
Plaintiff TPR Investment Associates, Inc.*