UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SAGI GENGER,

Third-Party Plaintiff,

v. 10 Civ. 4506 (SAS)

GILAD SHARON; OMNIWAY LIMITED; and LERNER MANOR TRUSTEESHIPS LTD.,

Third-Party Defendants.

------------------------------x

New York, N.Y.
April 10, 2012
5:30 p.m.

Before:

HON. SHIRA A. SCHEINDLIN,

District Judge

APPEARANCES

DUANE MORRIS
Attorneys for Third-Party Plaintiff and TPR Investment Associates
BY: JOHN DELLAPORTAS
EVANGELOS MICHAILIDIS

WACHTEL MASYR & MISSRY
Attorneys for Third-Party Defendants
BY: WILLIAM B. WACHTEL
WALTER P. STASIUK





(Case called)

THE COURT: This is also a premotion conference. I have a letter, dated March 26, from Mr. Dellaportas. He wants to make a motion for summary judgment on behalf of third-party plaintiffs against third-party defendants Gilad Sharon and Omniway. And I have a letter, dated March 26, from Mr. Wachtel representing third-party defendants Gilad Sharon, Lerner Manor Trusteeships, Limited, and Omniway Limited, and he wants to make a motion for summary judgment as to the claims that the third-party plaintiffs, Sagi Genger and TPR Investment Associates, have brought against Sharon, Lerner Manor and Omniway.

Then I have a letter, dated March the 29th, from Mr. Dellaportas opposing Mr. Wachtel's request to make a summary judgment motion, and he explains why he opposes that motion.

I have one question for you to start, Mr. Dellaportas. In opposing the proposed motion, the third-party defendants, the proposed motion, are you saying that it's because there are issues of fact or are you saying it's because you are going to win, so their motion is irrelevant?

MR. DELLAPORTAS: I would say the latter. And if not the latter, then the former.

THE COURT: If you were not to prevail on your motion you are saying there are issues of fact that would prevent





their motion from being successful?

MR. DELLAPORTAS: Yes, your Honor.

THE COURT: Mr. Wachtel, did you, in essence, respond to the third-party plaintiff's request to make summary judgment in the same sense that Mr. Dellaportas responded to yours?

MR. WACHTEL: I think that's fair, your Honor, yes.

THE COURT: You did?

MR. WACHTEL: I'm sorry. I think it is fair.

THE COURT: To say you didn't.

MR. WACHTEL: That I did not.

THE COURT: Let's take the two up separately, so to speak, and see if I can sort through the issues.

With respect to your proposed motion, Mr. Wachtel, you do seem to rely on the fact that the third-party plaintiffs are not in possession of the signed original of the Omniway note and you can't explain the lack of he possession. I don't know where the original is or what happened to it.

Mr. Dellaportas has responded to that argument by saying, obviously, the original has been misplaced, but that doesn't mean there wasn't a note and that doesn't mean it's not enforceable. And he cites a New York case that says, and I'm quoting the part he quoted: "Copies of promissory notes and guarantees are admissible under the best evidence rule where existence of the original writings and the authenticity and accuracy of the copies are not disputed."





Since you have said that Omniway does not exist, and I'm quoting, "Omniway does not exist. We do not know if it ever existed. We are aware of no one who represented Omniway."

Since you have now taken that position, I don't see how you can assert a dispute on behalf of Omniway about this note. It seems like there is plenty of extrinsic evidence, so to speak, that this note existed. As Mr. Dellaportas writes in his letter, he said: "Although a diligent search has yet to recover the misplaced original, identical executed copies of the note have been found in the files of both AG Properties, which was the note holder, and Raines & Fischer, which was the company's outside accountants."

The corporate files also reveal a written consent signed by the then sole member of the board adopting the following resolution, and I quote: "That the company hereby accepts the prescription offer of Omniway Limited, a Cyprus company, to purchase 100 shares of the company's authorized

outstanding share capital. No value per share for an aggregate purpose -- it should be purchase -- for an aggregate purchase price of $1,250,000 upon terms evidenced by the promissory note attached here to as Exhibit C. And then annexed to that resolution is Exhibit C, is a promissory note identical to the version executed by Omniway." With all of that, it sure seems like there was a note.

MR. WACHTEL: Your Honor --





THE COURT: Whether or not there is an original. There is a lot of evidence of a note.

MR. WACHTEL: There is a lot of evidence that there may have been a note.

THE COURT: I would take out the may have been. We have an executed copy found in the files of AG Properties. We have an executed copy found in the files of the outside accountant. We have a corporate resolution that attaches the executed note. Come on. That's three executed versions in three different places. I know you're a lawyer with a client, but that's overwhelming. There is a note.

MR. WACHTEL: Okay, your Honor. There is an e-mail from the lawyer for Mr. Genger to the accountant in later times where it says: Gilad did away with Omniway. And he subscribed for his shares by simply making a purchase. They are suing on a note that even if there was ever an original, it was never tendered and --

THE COURT: That's a question of fact at best, at best. Let me explain. I can't say this wrong. According to the law in the Second Circuit, I can't tell you that you can't move for summary judgment. I can only make every effort to dissuade you and, of course, point out to you Rule 11, et cetera.

I have enough here to know that the motion couldn't be won. There is so much evidence of an executed note, there may





be an issue of fact as to whether it was tendered, according to you. But there is three places that an executed copy of the note is found. It's attached to the corporate resolution, the accountant has it, and there is it's in the AG's files. That's enough to defeat any motion that there was not a note.

While you are permitted to move, because that's the law in the circuit, you would be wasting your time. And then if we got to Rule 11, you know how that would come out. That's the best I'm allowed to say. You make your own decision.

MR. WACHTEL: Your Honor, if I may, we believe that at trial, under the rules, the best evidence rule, this note will not end up in evidence.

THE COURT: Because I won't allow it or because a jury will reject it.

MR. WACHTEL: Because there are genuine issues as to the authenticity. And every book and record of the entity --

THE COURT: What entity?

MR. WACHTEL: The entity in favor of whom this note --

THE COURT: What entity?

MR. WACHTEL: AG Properties.

THE COURT: Go ahead.

MR. WACHTEL: It never reflected on the books.

THE COURT: I saw that in your letter. The books and records never reflected --

MR. WACHTEL: The accountant and the lawyer who were





involved in the transaction speak about the fact in e-mails that the decision was made not to subscribe through a note, but I'm happy to try the case.

THE COURT: I don't think your motion is viable, I must say. I'm not allowed to say you can't make it, so you can make it, but you need to consider whether given what is said here today you should.

MR. WACHTEL: We won't.

THE COURT: It's up to you. That's one motion.

Let's turn to your motion, Mr. Dellaportas. Is your motion not based on the note that this note is there, it was never paid, therefore it's owed? Wouldn't it raise the very same fact questions whether the note was actually tendered, whether there really is a note? Once the jury knows that, it's easy to prove it wasn't paid. Let's say the jury finds there was a note. There is really no dispute that it wasn't paid. Isn't that right, Mr. Wachtel?

MR. WACHTEL: That's correct.

THE COURT: It's really a one-issue case. This one, unlike the last three conferences I've had, could be a two-day trial. The jury concludes if there was a note or not. Mr. Wachtel just conceded if there was. There is no question of fact that it wasn't paid. It's a one-issue trial.

Is it jury or nonjury? If it's not jury, it's even sillier, just try it, and I will tell you whether there was a





note. If it's a jury, it's a jury. It won't take long either. Is it a jury trial? Is there jury demand on this third-party action?

MR. WACHTEL: No, your Honor. It's his action.

THE COURT: You don't think so, though.

MR. WACHTEL: I don't think so.

MR. DELLAPORTAS: Your Honor, I'm embarrassed to say, sitting here today, I can't remember whether we demanded a jury.

THE COURT: Would it be in the third-party complaint? Mr. Wachtel has it. Would you like to take --

MR. DELLAPORTAS: I trust Mr. Wachtel.

THE COURT: Take a minute. Take a look.

MR. DELLAPORTAS: It does not appear we demanded one, your Honor.

THE COURT: Did you demand one in your response?

MR. WACHTEL: No, your Honor.

THE COURT: Do you have that handy?

MR. WACHTEL: I do. But if I did, I withdraw it.

THE COURT: You have the right to do that. If you did, you withdraw it.

MR. WACHTEL: Either way, we would be happy to try it before your Honor.

THE COURT: Then summary judgment doesn't make any sense. I have to be the person twice. The evidence has to

come in on both sides. If there is a note, you win.

MR. DELLAPORTAS: Your Honor, I think I can address that. In an ordinary case what your Honor said would make perfect sense. But this isn't an ordinary case in that some kind of unique things have happened in this case which I have never really experienced before. We have this note and it's against Omniway.

THE COURT: There is no Omniway. The lawyer now says -- you put it in your letter and I read it back into the record -- the lawyer says Omniway does not exist. We do not know if it ever existed and we are aware of no one who is a representative of Omniway. Even that, Mr. Wachtel, Omniway is not represented in this case. It's in default. Is that your point? There is no Omniway.

MR. DELLAPORTAS: My point is that exactly, your Honor, that with respect to the very last part of that, they are not aware of who our representative is. I don't think it's fair for us to have to litigate essentially against a phantom.

THE COURT: That's not your only defendant. You've also sued Mr. Sharon individually, saying he's an alterego anyway.

MR. DELLAPORTAS: I would like to address that point.

THE COURT: Let's jump over it. Let's say he is the alterego. I still have to try the case about the note.

MR. DELLAPORTAS: We would say no, your Honor, because





there is no issue of fact because on the one hand there is us alleging that it's enforceable. On the other hand, there is not Omniway alleging that it's unenforceable.

THE COURT: Mr. Sharon is taking that position.

MR. DELLAPORTAS: No, your Honor.

THE COURT: Sure he is.

MR. DELLAPORTAS: His lawyers are taking that position.

THE COURT: The lawyers are acting on behalf of Mr. Sharon.

MR. DELLAPORTAS: Yes.

THE COURT: They are his lawyers.

MR. DELLAPORTAS: The difference is is that when we deposed Mr. Sharon, his position was, I have never seen this note, I don't know anything about it. That's not taking a position that it's unenforceable. That's taking the position, I didn't know anything about it.

THE COURT: No. I disagree with that. That's going to be some of their evidence, that the note was never tendered. Assuming he's the alterego, actually it benefits to them to some degree to call him the alterego, he is going to say, I never tendered it. If I am Omniway, and for this purpose I concede I am, I never tendered it. That's going to be his testimony. I may not find it credible, you will win, or I may find it credible, you may not win. There is going to be other





evidence besides him. He is going to testify, one thing I know for sure, I never tendered a note. Why isn't that evidence about the note? You are the one who is telling me he's the

alterego, and I am willing to buy into that. If you win, you have a judgment against Gilad Sharon. Is there a third defendant or that's it, Sharon and Omniway? There is no Omniway, but is there a third defendant?

MR. WACHTEL: Yes, your Honor.

THE COURT: Who is that?

MR. DELLAPORTAS: It's Lerner Manor, your Honor.

THE COURT: You represent them, Mr. Wachtel?

MR. WACHTEL: Yes, your Honor.

THE COURT: You do?

MR. WACHTEL: Yes.

THE COURT: They exist?

MR. WACHTEL: They exist.

THE COURT: Two defendants. What is the role of Lerner? I know I read the letters last night.

MR. WACHTEL: Lerner Manor, according to the lawyers and accountants in e-mails and according to our client, was the entity that in fact subscribed for and became a partner in AG Properties.

THE COURT: Why are you saying Lerner Manor?

MR. DELLAPORTAS: We sued them at the beginning on discovery because it was never clear what their role was.





THE COURT: Do you still want them as a defendant?

MR. DELLAPORTAS: No, your Honor.

THE COURT: That's the answer. They are not a defendant any longer. They are dismissed.

There is only one defendant. It's Gilad Sharon. You're looking for a judgment against him that I guess is a default judgment against Omniway, which doesn't exist anyway. You want a default judgment against Omniway?

MR. DELLAPORTAS: At this point, we would ask for a straightforward judgment against both of them, both defendants.

THE COURT: It's a default. They are not going to be defended at trial. They have no lawyer. The corporation can't appear pro se and that's that. If there is no lawyer representing them, they have defaulted.

MR. DELLAPORTAS: It's a bit of a unique situation because a lawyer did appear --

THE COURT: No longer. There was one. That lawyer withdrew. Who was that? That was Mr. Wachtel?

MR. WACHTEL: Your Honor, yes. In fact, the prior counsel appeared on their behalf.

THE COURT: Prior counsel. Who was that? You've been here forever on this case. Who was prior counsel?

MR. WACHTEL: Silverberg.

THE COURT: I don't remember that. Anyway, that person --





MR. WACHTEL: Yes, you are right. There is no entity. Therefore, there was no one that we can represent. Therefore, we are withdrawing as its counsel.

THE COURT: I think it would have to be a default judgment. Take it. If you can never enforce it, good. That's easy.

You're trying a one-defendant case, Gilad Sharon, and that's it. You will have your default judgment if you can

never enforce it.

MR. DELLAPORTAS: Your Honor is indicating that it will be an issue about the alterego relationship or is that something --

THE COURT: No. I think I can do that as a matter of law. I don't know whether Mr. Wachtel wishes to contest that and brief that and all the rest of it. You want to talk about it? You are supposed to say --

MR. WACHTEL: May I consult?

THE COURT: Yes, indeed.

MR. WACHTEL: I don't believe the comment my colleague was going to make was wrong. We are prepared to defend the case on behalf of Gilad Sharon.

THE COURT: Do you contest the finding that he's the alterego of Omniway?

MR. WACHTEL: Sure we do.

THE COURT: You do contest it?





MR. WACHTEL: Absolutely.

THE COURT: So it seems that that is a question of fact in our little short trial. You would have to prove that he's the alterego.

MR. DELLAPORTAS: We think we can establish that as a matter of law, your Honor.

THE COURT: I don't see the point of summary judgment and a nonjury trial. It would be repetitive. I don't believe the note can be done by summary judgment. So whatever evidence you are going to put in on the summary judgment, on the alterego, put it on the stand, or just offer exhibits. That would do it. If you think you can do it by exhibits, no testimony, that's fine. I don't see why we have to separate the two.

MR. DELLAPORTAS: Okay. If that's your Honor's view, we definitely don't want to waste the Court's time.

THE COURT: That's my view, is I am going to have to try the note issue on the tender, even if there is plenty of evidence that this duplicate is as good as the original. He is still saying, aside from all that, was this note ever really tendered, and he has some evidence to offer that doesn't appear on the books of AG, AG Holdings or whatever it's called, or AG Properties, that the lawyers and accountants say it wasn't done. I thought what the third piece was, but he has got some evidence, too. I have to listen to the evidence and make a





determination.

While I'm at it, put in the proof that shows the alterego. I saw it in your letter. It's fairly straightforward. I don't know what he is going to do to contest that, but we will see. We will get it done all at once. There it is. You wrote in your letter: To the extent it can be gleaned from discovery, Omniway was formed by Mr. Sharon's -- do you want to consult with each other?

You want to consult or you want to talk while I'm talking? It's the simplest thing to teach, but people don't get it.

To the extent it can be gleaned from discovery, Omniway was formed by Mr. Sharon's accountant for his client's

benefit. He never observed any corporate formalities and appeared to be acting solely as Mr. Sharon's alterego. The final point was driven home by the recent discovery dispute where Mr. Sharon said he doesn't know whether this corporation was ever even formed. It's not a big description of the evidence. Proving alterego is sort of a generality. So we will see.

MR. WACHTEL: The conundrum is as follows. Mr. Gilad Sharon says it may be that maybe accountants or lawyers thought that I should invest in this company through the Cypriot entity. I don't know it was ever formed. It certainly was never authorized to do anything by me. It never in fact





subscribed. I made my purchase through Lerner Manor, period.

As a result, Mr. Sharon doesn't feel and we don't believe we can act on behalf of Omniway because we have no reason to know or not know whether it ever was even in existence. If there is a default judgment against Omniway, which we recognize is necessary because there is no one here to defend it, they will have to present evidence not only that not only was there a note, but it was tendered, but they would also have to demonstrate that Mr. Sharon is responsible for the obligations of Omniway.

THE COURT: Correct. And that's what they are prepared to do.

MR. WACHTEL: Right.

THE COURT: Right, Mr. Dellaportas?

MR. DELLAPORTAS: Yes, your Honor. I would note that there is an element we would like the Court to consider, which is that we have been required to actively litigate against "Omniway" for the past two years through two sets of counsel without apparently ever any authorization from this Omniway entity, based on, I guess, Mr. Sharon authorizing or asking two lawyers to litigate against us, and we feel we have been a little frustrated in that regard.

If we were going to take a default, we would have taken it two years ago and gone and run with it and taken whatever discovery we have taken, and now two years later to





learn that we are defaulting at this late stage is a little unfair, and we believe that Mr. Sharon's actions and authorizing counsel to appear on behalf of Omniway and actively litigate very much is going to the alterego analysis.

THE COURT: Yes. When you say Mr. Sharon authorized it, is there a written authorization that you know of, Mr. Dellaportas, or is it oral, or you don't know?

MR. DELLAPORTAS: When we first received the letter from Omniway's counsel saying they don't know who represents Omniway, I naturally asked, I think, Mr. Silverman and Mr. Stasiuk --

THE COURT: Who is Mr. Silverman?

MR. DELLAPORTAS: Another lawyer at the same firm, your Honor.

THE COURT: Same firm. I thought Mr. Wachtel was implying change of counsel.

MR. DELLAPORTAS: There was a change of counsel. It was originally Mr. Montclare and Ms. Wachtler, and they were

substituted out about, it feels like a year and a half ago.

THE COURT: Did they allegedly represent Omniway, also?

MR. DELLAPORTAS: Omniway, too. Same sets of lawyers.

THE COURT: Two sets of lawyers. One was, you said, Montclare & Wachtler, and then this firm.

MR. DELLAPORTAS: So when we asked if you don't know





who represents Omniway, who have I been litigating against for the past two years, I was told it was Mr. Sharon. In fact, a subsequent letter to the Court said that they were appearing on behalf of Mr. Sharon. And appearance has been entered. My clients have been forced to litigate against a phantom for two years and now we are being told, go take a default judgment and good luck. That's a little inequitable, given what's happened.

THE COURT: What would you like me to do?

MR. DELLAPORTAS: I think we are entitled to a finding that Mr. Sharon -- and based on the fact that he has had his attorneys coming in and fight me, finding that he's their alterego. I don't think he can have it both ways.

THE COURT: Do you have a written authorization for Mr. Sharon to represent Omniway? If you do, you are required to produce it. I'm ordering you to produce it.

MR. WACHTEL: I do not, your Honor.

THE COURT: You do not. Serve a subpoena on Montclare & Wachtler for any written authorization from Mr. Sharon to represent the corporation known as Omniway.

MR. WACHTEL: Your Honor, we will ask them as predecessor counsel to produce it forthwith.

THE COURT: If it exists. You don't have a written authorization?

MR. WACHTEL: I do not, your Honor.

THE COURT: This is the problem. You may become a





witness because if you have an oral authorization. That counts, too. If you are authorized by Mr. Sharon, that is an act going to the alterego theory. He is acting on behalf of the corporation and nobody else is. If anybody, it was him. What are we going to do about that? Because retainers are not privileged.

MR. WACHTEL: Understood.

When you are sued on an alterego theory, as we are here -- your Honor --

THE COURT: You want to think? Thinking is good.

MR. WACHTEL: If you're sued on an alterego theory, I would say, look, that entity doesn't exist, and even if it did, I'm certainly not responsible for its conduct.

THE COURT: If you authorized the lawyer to represent him, you acted on his behalf.

MR. WACHTEL: That's certainly accurate, your Honor. I will represent to the Court that we did come in as substitute counsel.

THE COURT: I know that. But I don't know if you had a conversation with Mr. Sharon where he authorized you to appear on behalf of Omniway.

MR. WACHTEL: I am representing to you that I did not.

THE COURT: I know about predecessor counsel. We need

to ask the other two counsel in your office.

(Continued on next page)





THE COURT: It's for some reason you took it on, we have a little investigation to do here, because I understand your frustration Mr. Dellaportas, it may go to the issue of alterego. So, as I said, you may become a witness and then Mr. Sharon will need new counsel, so, let's see what happens.

MR. MICHAILIDIS: Your Honor, may I have a moment just to confer with Mr. Dellaportas?

THE COURT: Sure, sure.

MR. DELLAPORTAS: Thank you, your Honor.

THE COURT: All right. Well, now we need to -- oh, thank you for the --You're not done -- yes, go ahead.

MR. DELLAPORTAS: So I, just so we understand your Honor's rule correctly, to the extent there are either retainer engagement letters or anything else --

THE COURT: Oh, yes. If there's any written documents from either the current firm or the predecessor firm, you're definitely entitled to that, but it may go further. If there's nothing in writing, surely somebody authorized somebody to appear on behalf of Omniway and I want to get to the bottom of that.

MR. DELLAPORTAS: Thank you, your Honor.

THE COURT: Now, as I said to Mr. Wachtel, I say the same thing to you, I cannot stop you from making a summary judgment motion with respect to the note, or the alterego. Again, I'm just telling you it seems to me completely





inefficient in a non-jury context. If you do, I may merge it with the trial anyway, makes sense to me. It's the same person. I'm not going to do it this twice. If I find a question of fact, which I think I will on the note for sure, maybe not on the alterego, then it's silly to do it twice, so you may make your own decision.

MR. DELLAPORTAS: Your Honor, I think we would like, if the Court would permit, to defer that decision until we see what the documentation is that's going to be produced on the authorization question.

THE COURT: Right, yes. That's fine. And I think hopefully you're referring more to the alterego issue than the note issue.

MR. DELLAPORTAS: Yes, your Honor.

THE COURT: I'm thoroughly convinced that it is an issue of fact, though that will be decided relatively promptly in a trial.

MR. DELLAPORTAS: It may narrow the issues for trial and help us know what we need to prepare for.

THE COURT: Now, given we have witnesses from the abroad, we're going to have the same problem scheduling a trial we've had scheduling depositions.

MR. WACHTEL: I don't think so, your Honor. Mr. Sharon's father is now home and --

THE COURT: Home? Oh.

MR. WACHTEL: Yeah, he's been lying in a coma and they brought him from the hospital.

THE COURT: And he lives.

MR. WACHTEL: He is alive. We will happily try this case as soon as your Honor's calendar permits.

THE COURT: That's one of the funnier things I've heard. My calendar is awful. I don't think my calendar permits till July, not even for two day non-jury trial.

MR. DELLAPORTAS: Your Honor, I was just before Judge Gardephe yesterday, and he has scheduled us for a two week trial on July 16th, so we'd be happy to try it in perhaps May, if your Honor can squeeze us in.

THE COURT: No, I can't.

MR. DELLAPORTAS: Absent that, we would ask that the trial be put off until after my trial is in before Judge Gardaphe.

THE COURT: Not before -- not early July.

MR. DELLAPORTAS: It's going to be a fairly big case, your Honor, and I would not want to try another case in the middle of the trial preparation.

THE COURT: I can't do more till then. I'm just completely booked.

MR. DELLAPORTAS: We could do August, your Honor?

THE COURT: Yeah, it's kind of sad, but we can, because you're on a two week trial starting July 16th, so when





are you going to be ready to do it in August?

MR. DELLAPORTAS: Your Honor, I, by force of good luck, I have my client with me in the courtroom. With your Honor permission, if I could just walk back there and consult on scheduling?

THE COURT: Sure.

MR. DELLAPORTAS: Thank you.

THE COURT: Meantime.

MR. DELLAPORTAS: Your Honor, we would be fine for a trial in August, perhaps not the first week in case the other trial runs over, but after that.

THE COURT: I have a non-jury trial for August 13th, unbelievable. August 20th, Monday, August 20th.

MR. WACHTEL: I will, your Honor, obviously my client's not here.

THE COURT: Right.

MR. WACHTEL: If for any reason that date is entirely unworkable, I'll immediately advise Mr. Dellaportas every day from that day through the end of September, but hopefully the 20th will work.

THE COURT: Hopefully what?

MR. WACHTEL: Hopefully he will in fact have no difficulty being here on the 20th.

THE COURT: Hopefully.

MR. WACHTEL: Thank you, your Honor.





THE COURT: All right. So you'll pursue that discovery and if you have any problem getting what you're entitled to, any resistance, ask for a conference.

MR. DELLAPORTAS: Thank you, your Honor. And we may

contemplate some additional motion or whatever depending on what we get, but we'll do a premotion letter, if that's the case.

THE COURT: All right, thank you.

MR. DELLAPORTAS: Thank you, your Honor.

(Adjourned)