**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

VLADIMIR GUSINSKI,

                              Plaintiff,

                    v.

SAGI GENGER,

                              Defendant,

            - and -

SAGI GENGER and TPR INVESTMENT ASSOCIATES,
INC., on behalf of AG PROPERTIES CO.,

                              Third-Party Plaintiffs,

                    v.

GILAD SHARON, LERNER MANOR
TRUSTEESHIPS, LTD. and OMNIWAY LIMITED,

                              Third-Party Defendants.

10 Civ. 4506 (SAS) (GWG)

ECF Case

## THIRD-PARTY PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SANCTIONS

John Dellaportas
Evangelos Michailidis
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
(212) 692-1000

*Attorneys for Third-Party*
*Plaintiffs Sagi Genger and TPR*
*Investment Associates, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................1

FACTS ........................................................................................................................5

ARGUMENT .............................................................................................................11

I.     Mr. Sharon's Multiple Violations Of Rule 26 Warrant
The Issuance of Preclusion Sanctions Under Rule 37(b)................................11

     A.    Sanctions are Warranted ........................................................11

     B.    Preclusion Is The Most Appropriate Sanction .......................16

II.    Preclusion Sanctions Are Also Warranted
Under the Court's Inherent Powers................................................................19

III.   Mr. Sharon's Attorneys Should Be Directed To Reimburse
Third-Party Plaintiffs For Their Wasted Legal Fees Under § 1927..................22

CONCLUSION...........................................................................................................25

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                                <u>Page(s)</u>

*Am. Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States of Am.*,
   2009 U.S. Dist. LEXIS 47986 (E.D.N.Y. 2009)..................................................................12

*Am. Stock. Exch., LLC v. Moped, Inc.*,
   215 F.R.D. 87 (S.D.N.Y. 2002) ..........................................................................................15

*Apex Oil Co. v. Belcher Co. of New York*,
   855 F.2d 1009 (2d Cir. 1988)........................................................................................22, 24

*Ass'n of Holocaust Victims For Restitution of Artwork & Masterpieces v.*
*Bank of Austria Creditanstalt, Ag*
   2005 WL 2001888 (S.D.N.Y. Aug. 19, 2005) .....................................................................23

*Bank of Cyprus (Holdings) Ltd. v.*
*Republic of Cyprus, Through the Commissioner of Income Tax (1985)*
   3C C.L.R. 1883 ....................................................................................................................15

*Blum v. City of Yonkers*,
   2011 U.S. Dist. LEXIS 127295 (S.D.N.Y. Nov. 3, 2011) ...................................................16

*Chambers v. Nasco*,
   501 U.S. 32 (1991)...............................................................................................................19

*Copeland v. Rosen*,
   208 F.R.D. 507 (S.D.N.Y. 2002) ........................................................................................14

*Daval Steel Prods. v. M/V Fakredine*,
   951 F.2d 1357 (2d Cir. 1991)...................................................................................17, 18, 19

*Design Strategy, Inc. v. Davis*,
   469 F.3d 284 (2d Cir. 2006)........................................................................................*Passim*

*DLC Mgmt. Corp. v. Town of Hyde Park*,
   163 F.3d 124 (2d Cir. 1998)...........................................................................................19, 21

*Enmon v. Prospect Capital Corp.*,
   675 F.3d 138 (2d Cir. 2012) ...............................................................................................22

*Funnekotter v. Republic of Zimb.*,
   2011 U.S. Dist. LEXIS 130363 (S.D.N.Y., Nov. 10, 2011) ................................................17

*In re Ski Train Fire in Kaprun Austria on November 11, 2000*,
   2007 WL 2398697 (S.D.N.Y. Aug. 16, 2007).....................................................................23

*In re The 1031 Tax Group, LLC,*
   2010 WL 2851300 (Bankr. S.D.N.Y. July 16, 2010) ..........................................16

*Ins. Corp. of Ir. Ltd. v. Compagnie Des Bauxites de Guinee,*
   456 U.S. 694 (1982)..........................................................................................16

*Itel Containers Int'l Corp. v. P. R. Marine Mgmt. Inc.,*
   108 F.R.D. 96 (D.N.J. 1985)............................................................................25

*Jain v. Ford Motor Credit Co.,*
   174 F.R.D. 259 (E.D.N.Y. 1997) .....................................................................23

*Lodge v. United Homes, LLC,*
   787 F. Supp. 2d 247 (E.D.N.Y. 2011) .............................................................17

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.,*
   191 F. Supp. 2d 440 (S.D.N.Y. 2002)..............................................................21

*Metro. Opera Ass'n, Inc. v.*
*Local 100, Hotel Employees & Rest. Employees Int'l Union,*
   212 F.R.D. 178 (S.D.N.Y. 2003) .....................................................................12

*Mugavero v. Arms Acres, Inc.,*
   680 F. Supp. 2d 544 (S.D.N.Y. 2010)..............................................................21

*Murray v. Mitsubishi Motors of N. Am., Inc.,*
   462 Fed. Appx. 88 (2d Cir. 2012) ...................................................................18

*Nadler v. Princess Hotels Int'l,*
   1996 U.S. Dist. LEXIS 5740 (S.D.N.Y. Apr. 30, 1996)....................................20

*Oliveri v. Thompson,*
   803 F.2d 1265 (2d Cir. 1986)..........................................................................19

*Penthouse Int'l, Ltd. v. Playboy Enter., Inc.,*
   663 F.2d 371 (2d Cir. 1981)............................................................................18

*Reilly v. Natwest Mkts. Group Inc.,*
   181 F.3d 253 (2d Cir. 1999)............................................................................24

*Residential Funding Corp. v. DeGeorge Fin. Corp.,*
   306 F.3d 99 (2d Cir. 2002)........................................................................18, 19

*Roadway Express, Inc. v. Piper,*
   447 U.S. 752 (1980)........................................................................................18

*Update Art, Inc. v. Modiin Pub, Ltd.,*
    843 F.2d 67 (2d Cir. 1988)..................................................................18

*Vasco v. Operation Rescue Nat'l,*
    80 F.3d 64 (2d Cir. 1996) ...................................................................23

*Veal v. Geraci,*
    23 F.3d 722 (2d Cir. 1994)..................................................................14

*Veliz v. Crown Lift Trucks,*
    714 F. Supp. 49 (E.D.N.Y. 1989) ......................................................23

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.,*
    259 F.3d 1101 (9th Cir. 2001) ............................................................16

<u>Statutes and Rules</u>

28 U.S.C. § 1927.......................................................................................*Passim*

Fed R. Civ. P. 11(b) ...............................................................................8, 19

Fed. R. Civ. P. 16(f)...................................................................................16

Fed. R. Civ. P. 26....................................................................................*Passim*

Fed. R. Civ. P. 37....................................................................................*Passim*

<u>Other Authorities</u>

"Police recommend criminal charges against Ariel Sharon's sons
    in $4.5 million bribe case," *Haaretz* (Feb. 2, 2011) ...............................5

"State: Appel told Sharon that his son, Gilad, would earn large sums,"
    *Globes: Israel's Business Arena* (Jan. 21, 2004)....................................5

*Bank of Cyprus (Holdings) Ltd. v. Republic of Cyprus,*
    *Through the Commissioner of Income Tax,*
    3C C.L.R. 1883 (Sup. Ct. Cyprus 1985)............................................15

*State of Israel v. Gilad Sharon,*
    Criminal Appeal 8600 / 03 (Dec. 10, 2003).........................................13

*Gilad Sharon v. State of Israel,*
    Criminal Appeal 1761/04 (Mar. 29, 2004) ..........................................13

Third-party plaintiffs Sagi Genger and TPR Investment Associates, Inc. ("TPR"), on behalf of AG Properties Co. ("AG Properties"), respectfully submits this memorandum of law in support of their motion for sanctions against third-party defendant Gilad Sharon and his attorneys, pursuant to Federal Rules of Civil Procedure 26 and 37, this Court's inherent powers to sanction, and 28 U.S.C. § 1927.  Specifically, third-party plaintiffs request that this Court enter an order: (a) precluding Mr. Sharon from denying his responsibility for the debt underlying the judgment entered in this case against third-party defendant Omniway Limited ("Omniway"); and (b) requiring Mr. Sharon's attorneys to reimburse third-party plaintiffs for their attorney's fees and costs incurred as a direct result of the sanctionable conduct.

## PRELIMINARY STATEMENT

This case arises out of a real estate venture in Montreal, Canada.  In 2002, Mr. Sharon, the son of the former Prime Minister of Israel, acquired a 50% interest in a real estate company, AG Properties, which in turn acquired two investment properties.  Mr. Sharon held his interest through a Cypriot company, Omniway, which bought the stake with a $1.25 million promissory note (the "Omniway Note"), secured by its shares in AG Properties.  In 2005, those shares were sold and Mr. Sharon personally pocketed approximately $1.5 million, *without ever paying down the Omniway Note*.  When AG Properties was unable to meet its obligations as they came due, the company's largest creditor, Vladimir Gusinski, sued it in state court and then, upon winning a judgment there, sued the company's President, Sagi Genger, individually in this Court.  Mr. Genger and TPR (which had been assigned AG Properties' collection rights) then impleaded Mr. Sharon and Omniway in a third-party action, seeking to collect upon the Omniway Note and/or for contribution and indemnification.  On November 29, 2010, this Court severed the first and third-party actions; the former settled; and the latter moved forward.

That is when things began to go haywire.  For the next 16 months, the parties actively

litigated the matters at issue, with two respectable law firms – first Mitchell Silberberg and then Wachtel & Masyr – jointly representing Mr. Sharon and Omniway.  During that time period, Omniway interposed affirmative defenses, engaged in the document discovery process, provided interrogatory answers (which Mr. Sharon personally verified), took and defended depositions, and ultimately sought leave to move for summary judgment.  Both firms have since testified that they independently concluded they had lawful authority to represent Omniway, based solely on communications they had with Mr. Sharon and his Israeli professionals.

If Mr. Sharon's sworn deposition testimony is to be believed, his lawyers all took leave of their senses. When asked about Omniway, Mr. Sharon testified that he was not even "sure if it was ever formed," and could not provide any information about the company.  As this raised more questions than it answered, we noticed a deposition for a Rule 30(b)(6) witness.  When Omniway refused to produce one, we asked Judge Gorenstein to compel the deposition.  Third-party defendants opposed, claiming in a February 14, 2012 letter that they were "aware of no one who is a representative of Omniway." Dkt. 102.  Judge Gorenstein, in turn, ruled that: "In light of defendants' letter …, it is plain that there is no order the Court could issue that would result in the production of a proper Rule 30(b)(6) witness on behalf of Omniway."  Dkt. 101.  Instead, Judge Gorenstein instructed that we raise the matter with Your Honor in the context of summary judgment.  *Id.*  We followed that instruction.

The Court is well aware of what happened next.  A conference that began with Omniway seeking leave to move for summary judgment ended with the withdrawal of its counsel, and the Court ruling that a default judgment would be entered against Omniway.  That judgment has now been entered.  But, as the Court noted both at the April 10, 2012 hearing and in a follow-on May 8, 2012 Order, that did not explain away the incongruities.  Discovery about the misconduct was ordered, then opposed, then ordered again, and finally half-heartedly complied with.

-2-

We describe the results of that Court-ordered discovery below.  The record, however, presents this Court with only two possibilities.  The first possibility is that Mr. Sharon is telling the truth – he knows next to nothing about Omniway, never had any involvement with it, and never authorized his two successive law firms to represent Omniway in this case.  If that is true, then two firms have committed a massive fraud upon third-party plaintiffs and this Court, and basically every document they filed in this case has perpetuated a lie.

Alternatively, both sets of counsel *were* properly authorized to represent Omniway, and Omniway is just a shell company whose corporate form Mr. Sharon used when it suited him, and then discarded when it came time to pay the bill.  Needless to say, we find this latter possibility far more plausible. As set forth below, it fits with all the discovery in this case not blocked by Mr. Sharon, which shows Omniway to be just a Sharon vehicle. And it is consistent with the way that Mr. Sharon's attorneys – *and Mr. Sharon himself* – acted in the case until he was ordered to testify.  Namely, Mr. Sharon and the professionals under his employ were the sole repository of information and answers about Omniway through the entire case.

However, Mr. Sharon's actions in this case have compromised third-party plaintiffs' ability to conclusively establish Mr. Sharon's relationship to Omniway.  We believe this to be deliberate.  During discovery Mr. Sharon's lawyers, acting on behalf of Omniway as well, made repeated representations that Omniway's records had been searched, and no records had been found.  In reality, his attorneys – believing Omniway to be a Sharon vehicle – only ever asked Mr. Sharon and his professionals, and never checked with anyone else.  While a privilege has been claimed over those communications (Exh. 10 pp. 34:25-35:6), it is clear that Mr. Sharon did nothing to disabuse his attorneys of that notion.  Instead, he let his attorneys falsely represent, on Omniway's behalf, that Omniway had not a single corporate record.

Had they done so, there is every reason to believe such documents would have been

found.  As explained in an accompanying declaration from Lambros Soteriou, a Cypriot lawyer, a Cyprus company's officers are legally required (under threat of criminal sanction) to maintain, *inter alia*, records of the company's beneficial owners, who regularly guaranty the debts of the company before a Cypriot nominee will act as the owner's designee.  Fiduciaries of the company regularly receive guaranties from beneficial owners before agreeing to act in that capacity. By his actions, Mr. Sharon shielded such documents from discovery.

When we called upon a Rule 30(b)(6) witness to confirm as much, under oath, Mr. Sharon reversed course, and had his attorneys claim that no one from Omniway had authorized them to act on the company's behalf.  This switcheroo has only compounded the prejudice to third-party plaintiffs.  Most significantly, it has needlessly exposed this Court's judgment to collateral attack.  Jurisdiction in this case was obtained on Omniway by acceptance of service by the Wachtel firm, which now claims it "never communicated with anyone purporting to speak on behalf of Omniway."  While this is plainly untrue, this will inevitably become an issue when we seek to enforce the judgment against Omniway in foreign jurisdictions.

Lastly, while Mr. Sharon is the architect of these shenanigans, his attorneys are not without blame.  While it was initially reasonable for them to believe Mr. Sharon had authority to speak for Omniway, once he expressly disclaimed such authority at his deposition, they should have withdrawn from representing Omniway.  Instead, they continued to zealously represent Omniway for months after that, compounding the needless litigation costs.

These actions have irrevocably prejudiced third-party plaintiffs.  The relief requested would remedy that prejudice.  As Mr. Sharon frustrated third-party plaintiffs' ability to pursue discovery on Omniway, as a matter of equity he should be precluded from denying the character of his relationship with Omniway, and his attorneys should have to reimburse the needless fees and costs they caused.  Any lesser sanction would reward them for their wrongdoing.

## FACTS

A whole book could be written about the convoluted Canadian transaction which gave rise to this dispute.  While space limitations prevent a full recounting, for purposes of the instant motion it is sufficient to note that Mr. Sharon, in his interrogatory answers, admits that the total of his cash investment was $25,000 in 2003, but by January 2006 he had withdrawn $1.5 million.  Exh. 5 p. 53:11-14; Exh. 6 ¶ 1.  In other words, absent repayment of the Omniway Note, Mr. Sharon earned a 6,000% rate of return in approximately two and a half years.[1]

Not surprisingly, discovery in this case focused on the status of Omniway, its role in the Canadian transaction, and its relationship to Mr. Sharon.  Requests for production were served on September 7, 2011, and answered on October 5, 2011.  For each request about Omniway, the third-party defendants, after interposing form objections, promised to "produce responsive, non-privileged documents in their possession, if any."  Exh. 3 ¶¶ 5, 6, 9, 11-13.  They made similar promises of production in their Rule 26(a) disclosure.  Exh. 4.  Nevertheless, they failed to produce even a single document from Omniway.  A telephonic meet-and-confer was held on December 12, 2011, whereat counsel "agreed to make inquiry as to the existence and location of Omniway's documents responsive to your requests and to let you know if they exist and, if so, when they will be produced."  Exh. 3 (last page).  Two days later, at his deposition, Mr. Sharon and his counsel represented to us that Mr. Sharon had "double-check" if any Omniway

---

[1]    Such miraculous returns seem to follow Mr. Sharon.  *See, e.g.,* "Police recommend criminal charges against Ariel Sharon's sons in $4.5 million bribe case," *Haaretz* (Feb. 2, 2011) (recounting the "Cyril Kern affair," by which a South African businessman was "accused of setting up a front company with Gilad Sharon to launder millions of dollars from abroad"); "State: Appel told Sharon that his son, Gilad, would earn large sums," *Globes: Israel's Business Arena* (Jan. 21, 2004) (recounting the "Greek Island affair," by which an Israeli businessman paid "as salary to Gilad Sharon" some $2.6 million to consult on a Greek casino project).  Notably, when the Israeli police questioned him about the $1.5 million he received in this transaction, Mr. Sharon invoked his right to remain silent, as he had done in all of his other cases.  *See* accompanying Dellaportas declaration (cited to herein as "Exh.__") Exh. 5 p. 178:9-15.

documents exist, and "the answer is 'No.'"  Exh. 5 pp. 179:22-180:3.

Other avenues of discovery proved more fruitful.  In their Rule 26(a) disclosures, third-party defendants named "Raines & Fisher LLP [as] a non-party accounting firm with knowledge concerning the formation and relevant business interests of AG Properties" (Exh. 4) and Mr. Sharon, in his deposition, identified William Fischer of that firm as the professional with whom he worked most closely on the Canadian venture.  Exh. 5, pp. 31:13-15, 43:12-18.  Accordingly, that firm was subpoenaed for its relevant documentation, and Mr. Fischer was subpoenaed to testify.  The subpoena *duces tecum* turned up, among other things: (a) an executed copy of the Omniway Note identical to the one in AG Properties' files; (b) a Certificate of Incorporation and other information about the company provided in an email from Uri Harpaz, Mr. Sharon's Israeli accountant; (c) corporate documents (a Written Consent and Shareholders Agreement) reflecting that the Omniway Note was payment for 100 shares of common stock of AG Properties – the same shares Mr. Sharon subsequently sold and retained the proceeds thereof; and (d) a corporate flow chart indicating that Mr. Sharon owned "100%" of Omniway.  *See* Exh. 1.

To the extent this documentation left any doubt as to the nature of the relationship between Mr. Sharon and Omniway, the doubt was foreclosed by all of the deposition testimony that followed.  Specifically, Mr. Fischer, the lead accountant for the venture as per Mr. Sharon, testified that: "Omniway Limited is a corporation that I believe is owned by Gilad Sharon. Whether it's directly or indirectly I don't know, but I know that is certainly the context in which I know the name."  Exh. 2 p. 32:12-16.  Similarly, Arie Genger – a personal friend of Mr. Sharon[2] – when shown Omniway's name on the corporate flow chart, testified that: "To me it's

---

[2]     As the Court may recall, Mr. Arie Genger is a litigation adversary to his son Sagi in multiple forums.  Indeed, Arie testified that at the outset of the case, he voluntarily met with Mr. Sharon's attorney, Mr. Wachtel, to provide him information useful for Mr. Sharon's defense of the case.  Exh. 7 p. 14:11-15:9.

all Gilad.  All this segment is Gilad."  Exh. 7 p. 28:21-22.  It appears that Mr. Sharon named the company after the Omni Hotel, where he was staying at the time. *Id.* p. 59:12-60:25.

Even Mr. Sharon himself testified that Omniway was "my Accountant's idea of having … such a company as a structure for my holdings in the Canadian venture." Exh. 5 p. 53:5-7. While Mr. Sharon did go on to claim that he ultimately decided to invest in the venture through a different entity, Lerner Manor Trusteeships, Ltd., when shown documents debunking that claim, he responded:  "Look, I was, I never was interested in that legal stuff, all the, those bureaucracy. I let my professional do that.  I was running the business.  I didn't care about those documents.  I never saw them before or if I did, I don't remember it." *Id.* p. 144:3-10.

Mr. Sharon followed this same buck-passing approach when it came to this litigation. When it suited his strategy, he granted both of his law firms *carte blanche* to appear on behalf of Omniway and assert defenses that only Omniway would have standing to make.  Paul Montclare of the Mitchell Silberg firm (Mr. Sharon's first law firm), testified that he appeared on behalf of Omniway because Sharon, "in a conversation with Mr. Cop [Mr. Sharon's Israeli criminal defense attorney] where I explained the uncertainty with respect to the status of Omniway, there was a discussion about what the consequences of a default against Omniway might be, and ultimately it was left to me to determine how to best protect Mr. Gilad Sharon's rights with respect to the Omniway status issue." Exh. 9, p. 84:15-23.  He further explained that: "We saw our role as protecting the interest of Gilad Sharon.  … Omniway seems to have just evaporated from the paper trail at some point in time."  *Id.* p. 37:10-20.

Before an answer was filed or service accepted, the Wachtel firm replaced Mitchell Silberg, first only as Mr. Sharon's counsel but later as Omniway's counsel too.  The Wachtel firm testified that its authority also came from Mr. Sharon and his Israeli lawyer:

> Q.   Assuming there is some piece of paper by which your firm eventually appeared on behalf of Omniway, whose decision was that?
>
> A.   Whatever piece of paper, whether it was an answer or the like, was put in by my law firm on the belief that we were duly authorized to act on behalf of all of the defendants.
>
> Q.   And what was that belief based on?
>
> A.   A conversation I had with Mr. Sharon and his [Israeli] counsel.

Exh. 10 p. 15:11-23 (emphasis added).   Such authority did *not* come from the Mitchell Silberberg firm, whose witness Mr. Montclare testified that his firm made no representation to the Wachtel firm as its authority to represent Omniway.  Exh. 9, p. 90:20-25.

At the time of the hand-off to the Wachtel firm, service had not yet been effectuated. Accordingly, Mr. Wachtel's first step on behalf of its clients was to procure an extension of Mr. Sharon's time to respond to the Third-Party Complaint, which it obtained in part by bartering away Omniway's right to formal service.  Dkt. 50.  Thereupon, at Mr. Sharon's direction, the Wachtel firm began an aggressive defense of the case.[3]  On April 14, 2011, the firm filed a Rule 7.1 Statement where it certified to this Court that Omniway has no corporate parents.  Dkt. 52. That same day, it also filed an Answer which included 25 fact-specific affirmative defenses for Omniway, such as "mutual mistake" and "lack of meeting of the minds."  Dkt. No. 53, ¶¶ 42-66. On November 14, it filed Rule 26(a) disclosures, in which it made representations about the location of Omniway's documents, identify of its witness, and insurance.  Exh. 4.  On December 5, the firm filed an Amended Answer repeating the same defenses.  Dkt 94.

Each of these pleadings contained multiple factual assertions and defenses for which counsel, under Rule 11(b), was required to first obtain evidentiary support.  And it appears that

---

[3]   Like many cases where there is not much to defend, the Wachtel firm's "defense" was mostly just a scorched-earth style counterattack, including a weird obsession with third-party plaintiff Sagi Genger's relationship with his parents.  Plaintiff Sagi Genger was subjected to two days of badgering over inflammatory personal matters.  When the firm sought to subpoena the deposition of Mrs. Genger, Sagi's mother, who was not an owner, director or officer of the lender, Judge Gorenstein quashed the subpoena.  Dkt. 88.

the Wachtel firm did just that.  In each case, Mr. Sharon, and professionals under his employ,

were the one and only source of information about Omniway:

> I think the answer that I gave to the prior question, which will be the answer to
> this question, is going to be the answer to each and every question along these
> lines.  My law firm and my colleagues communicated with Mr. Sharon, and in
> turn his professionals in Israel. There was never anything done, to my knowledge,
> beyond that, in order to ensure that anything we said in any pleadings on behalf
> of Omniway was accurate or inaccurate.

Exh. 10 p. 32:10-22.

Were there any doubt that Mr. Sharon and Omniway are interchangeable, on January 17,

2012, the firm served answers to interrogatories which Mr. Sharon *personally* verified for

Omniway, swearing, *inter alia,* no less than ten separate times that Omniway has "never seen

the original of that Promissory Note."  Exh. 6 Resps. 10-19.

If Mr. Sharon wanted to assume and control the litigation on behalf of co-defendant

Omniway, a company of his own creation, he presumably had the right to do so, but then he had

a corresponding obligation to make sure his attorneys complied with Omniway's discovery

obligations, instead of subverting this whole process by lying about the searches undertaken and

the existence of corporate records.  Further, when it was clear that Mr. Sharon had chosen the

latter course, his attorneys had an equal obligation to step aside, and not be his partner in crime.

Here, the Wachtel firm manifestly failed.[4]

At his Court-ordered deposition, Mr. Wachtel testified that it was not until Mr. Sharon's

deposition in December 2011 that his firm learned that Mr. Sharon claimed to know nothing

about Omniway.  Exh. 10 p. 40:12-19.  While that is plausible, what is less so is why, after

learning of Mr. Sharon's newly professed ignorance, the Wachtel firm did not withdraw from

---

[4]     Mitchell Silberberg could also be blamed for failing to secure a formal retainer from
Omniway before entering an appearance on the company's behalf.  The firm has testified,
however, that its role was limited to the pre-answer period during which the third-party
case was largely on hold in favor of the first-party case.  Accordingly, the relief sought
herein against Mr. Sharon's attorneys applies only to the ones at the Wachtel firm.

representing Omniway and notify the Court of all of the false and baseless pleadings it had filed for Omniway at Mr. Sharon's direction.  When asked essentially this question at his deposition, Mr. Wachtel responded: "You would have to ask people whose intellect is greater than mine." *Id.* p. 50:7-11.  Mr. Wachtel, the first name on all of Omniway's pleadings, denied the Court the opportunity to obtain a better answer at the June 6, 2012 hearing, remaining in his office and leaving his colleagues to try to explain what happened.  Dkt. 113 p. 2:11-16.

Whatever the explanation, after Mr. Sharon's deposition, the Wachtel firm continued to represent Omniway, notwithstanding that Mr. Sharon was the sole source of every position it had taken on Omniway's behalf up to that point.  On January 17, 2012, it served the aforementioned interrogatory answers.  On February 14, in response to third-party plaintiffs' motion to compel, it told Judge Gorenstein: "Omniway does not exist; we do not know if it ever existed; and we are aware of no one who is a representative of Omniway."  Dkt. 102.  Yet nearly six weeks later, on March 26, it served a Rule 11 letter on behalf of Omniway threatening sanctions unless the Third Party Complaint was dismissed "in its entirety." Exh. 8.  The same day, the firm sought leave to move for summary judgment on Omniway's behalf.  *See* 3.26.12 Ltr. to Court.  It was only at the April 10 conference that the Court scheduled to consider that request that the firm – called upon to explain itself – orally withdrew from representing Omniway.  Dkt. 109, p. 13:1-3.

That is all history.  As the Court noted at the June 6 conference, however, "[t]here has to be some consequence." Dkt. 113 p. 3:8.  This motion is about finding the right consequence. At the conference, the Court initially suggested an adverse inference.  *Id.* p. 3:8-11.  For all the reasons set forth below, we believe more is needed to set things aright.  The Court has authority to grant preclusion and attorney's fees, and we believe it is warranted here.

-10-

**ARGUMENT**

This Court, under Fed. R. Civ. P. 26, 37 and its own inherent authority, may sanction Mr. Sharon and his attorneys for, *inter alia*, failing to supplement responses and disclosures, acting in bad faith, and perpetrating a fraud upon the parties and this Court. The sanction that would be most just here would be to preclude Mr. Sharon from denying his responsibility for the debt underlying the judgment against Omniway (the "Omniway Judgment"), and to require his attorneys to reimburse third-party plaintiffs for the attorney's fees and costs they incurred as a result of counsel's appearance on behalf of Omniway. While the former would essentially be case-dispositive,[5] any lesser sanction would have the inequitable result of allowing Mr. Sharon to *benefit* from his gaming of the judicial system. It would also turn a blind eye to the attorneys who enabled him, leaving third-party plaintiffs to shoulder all the cost.

**I.    Mr. Sharon's Multiple Violations Of Rule 26 Warrant
The Issuance of Preclusion Sanctions Under Rule 37(b)**

      **A.    Sanctions Are Warranted**

Federal Rule of Civil Procedure 37(c) gives this Court the explicit authority to sanction Mr. Sharon for his failure to provide the information required under Rule 26(e). Mr. Sharon's obligation was simple – he had to provide truthful answers to discovery and supplement those answers if they proved incorrect or incomplete. Fed. R. Civ. P. 26(e); Fed. R. Civ. P. 37(c)(1). Mr. Sharon intentionally abdicated these duties. Specifically, he and his attorneys represented to third-party plaintiffs – in their initial disclosures, in their document responses, in their sworn interrogatory answers, in the meet-and-confer, and in Mr. Sharon's deposition testimony – that

---

[5]    The Omniway Judgment addresses third-party plaintiffs' Second Cause of Action, but not their First Cause of Action for Contribution and/or Indemnification. Dkt. 108, 91. As the damages from the two claims largely overlap, if the requested relief is granted, then third-party plaintiffs will withdraw their First Cause of Action so a final judgment can be entered against Mr. Sharon without further imposition upon the Court.

Omniway's records had been searched, and no documents existed.

That was simply untrue.  As his own lawyer, Mr. Wachtel, later admitted at his Court-ordered depositions, documents were never requested from Omniway (Exh. 10, p. 41:11-42:2); indeed, his firm "never communicated with anyone purporting to speak on behalf of Omniway" (*see* 5.4.12 Ltr. to Court)  – other than Mr. Sharon himself, who later disclaimed any knowledge of, or involvement in, Omniway.  Of course, it is easy to understand why Mr. Sharon's lawyers believed it was sufficient to inquire about Omniway's documents solely with Mr. Sharon and his professionals – Omniway is plainly just a front for Mr. Sharon.  As noted above, when it suited his purposes, Mr. Sharon treated Omniway as an extension of himself.

Rule 37(c)(1), by its plain language, imposes a self-executing sanction unless the Rule 26(e) violation "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).[6]  The Second Circuit, in turn, has adopted a four-part test to determine whether to sanction a party under Rule 37(c).  Specifically, the Court must look to: (1) the party's explanation for the failure to disclose or supplement; (2) the importance of the evidence sought to be precluded; (3) the prejudice suffered by the opposing party; and (4) the possibility of a continuance.  *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (precluding lost profit theory where party failed to disclose under 26(a) or supplement under 26(e)).  Sanctions under Rule 37(c) do not require a finding of bad faith or callous disregard, but evidence of good or bad faith may be considered by this Court as part of Mr. Sharon's explanation for his failure to comply with his discovery duties.  *Id.* at 296; *accord Am. Friends of Yeshivat Ohr Yerushalayim, Inc. v. United*

---

[6]     Rule 26(g) also supports imposition of sanctions on Mr. Sharon for false discovery responses.  Specifically, it authorizes "appropriate sanction[s]" on the party on whose behalf the discovery responses, objections, and initial disclosures were signed if, *e.g.*, the discovery responses needlessly increase the cost of litigation or counsel failed to make reasonable inquiry into the bases for the responses.  Fed. R. Civ. P. 26(g)(1)(B)(iii),(3); *see also Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Restaurant Employees Int'l Union,* 212 F.R.D. 178, 219 (S.D.N.Y. 2003).

*States of Am.*, 2009 U.S. Dist. Lexis 47986, *19 (E.D.N.Y. 2009).

All four of these factors are found here.  First, despite this Court affording third-party plaintiffs multiple opportunities to provide one, no proper explanation has been proffered.  The most that has been suggested is that "Mr. Sharon is not an American citizen" who "really does not  understand" the workings of our legal system. Dkt. 113 p. 4:9-12.  At the June 6 conference, the Court appeared to reject that excuse, noting Mr. Sharon's sophistication.  *Id.* p. 4:13-17.  In an abundance of caution, however, we wish to reiterate just how sophisticated as to legal matters Mr. Sharon really is.  While not lawyer by trade, his numerous criminal investigations (see note 1, *supra*) have been heavily litigated in the Israeli courts.  In the process, Mr. Sharon has made important Israeli precedent on the obligation to produce documents.

In a December 10, 2003 judgment, the Israeli Supreme Court rejected Mr. Sharon's contention that his right as a criminal defendant to remain silent included a right to refuse to deliver documents ordered to be produced by the Magistrate's Court.  *See* Parnes Decl. Exh. A. Later, in a March 29, 2004 judgment, the Israeli Supreme Court rejected Mr. Sharon's contention that a statute authorizing a Court to require him to produce documents  in his "possession or power" applied not only to materials in his physical possession, as Mr. Sharon maintained, but also to any others "to which he has access, or that are in the possession of his representative, and which in any event, he could obtain possession thereof if he wished to do so." *Id.* Exh. B. Indeed, the earlier of the two decisions relies in part on American jurisprudence, and so the discovery rules of this Court should not be so alien to him.

In any event, Mr. Sharon retained two capable law firms to represent his interests in this case.  That Mr. Sharon professes a strong disinterest for "legal stuff" (Exh. 5 p. 144:3-6), and therefore appears to have granted his attorneys *carte blanche* to represent Omniway as they see fit is no excuse.  As the Court noted, there is long-established agency law which rejects these

sorts of arguments.  In a nutshell, Mr. Sharon cannot simultaneously delegate to professionals while trying to escape the consequences of his professionals – his agents – actions.  Rather, having chosen to delegate in this manner, he is charged the actions of his lawyers.  *See, e.g., Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) ("In general, when an agent is employed to represent a principal with respect to a given matter and acquires knowledge material to that representation, for purposes of assessing the principal's rights and liabilities vis-à-vis a third person the agent's knowledge is imputed to the principal."); *Copeland v. Rosen*, 208 F.R.D. 507, 515 (S.D.N.Y. 2002) ("[T]he case law is clear: the conduct of an attorney is imputed to his client, for allowing a party to evade 'the consequences of the acts or omissions of his freely selected agent' 'would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.'").

Turning to the second *Design Strategy* factor, the discovery that Mr. Sharon frustrated could not have been more consequential.  His financial and legal relationship to Omniway lies at the heart of this case.  Had he properly produced Omniway's corporate records, rather than lie about them, relevant materials would have been found.  As Cypriot lawyer Lambros Soteriou explains in his declaration, Cyprus has strict statutory requirements for corporate recordkeeping. *See* Soteriou Decl. ¶¶ 1-5, Exh. B.  Such records would have identified the company's beneficial owners.  This is significant because, as Mr. Soteriou explains, beneficial owners of a Cyprus company commonly will undertake to personally maintain the solvency of the company and/or to guaranty its debts.  *Id.* ¶¶ 6-8.  Mr. Sharon, by his discovery abuses, has squelched third-party plaintiffs' ability to find any similar arrangements here.

Further, even in the absence of an express agreement by Mr. Sharon as to Omniway's debts, discovery could have uncovered evidence relevant to his responsibility for those debts under various legal theories, including successor liability, alter ego, fraudulent conveyance, *etc*.

For example, Cypriot law permits a creditor to pierce the corporate veil under a legal standard akin to New York alter ego law.  *See* Soteriou Decl. ¶ 9, Exh. C: *Bank of Cyprus (Holdings) Ltd v. Republic of Cyprus, Through the Commissioner of Income Tax (1985) 3C C.L.R. 1883* (Sup. Court of Cyprus Aug. 30, 1985) ("[Firstly,] [w]ere the profits treated as the profits of the [parent] …[S]econdly, were the persons conducting the business appointed by the parent company? Thirdly, was the [parent] the head and the brain of the trading venture?  Fourthly, did the [parent] govern the adventure, decide what should be done and what capital should be embarked on the venture?  Fifthly, did the [parent] make the profits by its skill and direction? Sixthly, was the [parent] in effectual and constant control?").  Mr. Sharon's gamesmanship has precluded third-party plaintiffs from procuring evidence dispositive of this issue.

Turning to the third and fourth *Design Strategy* factors, there can be no doubt but that third-party plaintiffs have suffered prejudice which a continuance would not cure.  The case is two years old; discovery has long closed; and still we are not being told who is behind Omniway. Moreover, counsel's 11th-hour denial of authority to represent Omniway has put into question the acceptance of service on Omniway's behalf, should third-party plaintiffs move to enforce the Omniway Judgment in foreign jurisdictions.  The damage is done.

Ultimately, it is Mr. Sharon's obligation under Rule 37(c) to prove harmlessness or substantial justification for his Rule 26(e) violations.  *See, e.g., Am. Stock. Exch., LLC v. Moped, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (holding that "burden to prove substantial justification or harmlessness rests with the dilatory party" and that harmlessness exists only where "there is no prejudice to the party entitled to the disclosure" and substantial justification exists only where there is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.").  Because Mr. Sharon cannot possibly prove that his failure to honestly respond to and supplement his discovery was

either harmless or justified, let alone both, sanctions are warranted. And, as set forth below, the most appropriate sanction here would be an order of preclusion.

### B.    Preclusion Is The Most Appropriate Sanction

Once the Court determines that a Rule 26(e) violation merits Rule 37(c)(1) sanctions, subsection (C) thereof authorizes the Court to "impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1)(C). These potential sanctions, in turn, include orders:

> (i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

*Id.* The Circuit Courts "give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1). … Courts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citations omitted).[7]

"Sanctions should be tailored to the offensive conduct . . . and the Court retains broad authority to craft a proper sanction." *Blum v. City of Yonkers*, 2011 U.S. Dist. Lexis 127295, *11 (S.D.N.Y. Nov. 3, 2011). In *Ins. Corp. of Ireland v. Compagnie Des Bauxites de Guinee*, 456 U.S. 694, 707–08 (1982), for example, the Supreme Court affirmed the Court's Rule 37(b)(2)(A) discovery sanction establishing fact of personal jurisdiction where the failure to comply with

---

[7]    This Court's October 31, 2011 Rule 16(f) Order (Dkt. 87) provides an additional basis for such sanctions. Rule 16(f) authorizes this Court to look to Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii) for punishing violations of a scheduling order. *See, e.g.*, *In re The 1031 Tax Group, LLC*, 2010 WL 2851300, *4 (Bankr. S.D.N.Y. July 16, 2010). The Advisory Committee Notes to Rule 16 specifically state that "Rule 16(f) incorporates portions of Rule 37(b)(2), which prescribes sanctions for failing to make discovery. This should facilitate application of Rule 16(f), since courts and lawyers already are familiar with the Rule 37 standards." Fed. R. Civ. P. 16(f), advisory cut. notes (1983 amendments).

discovery requests precluded plaintiff from discovering facts necessary to prove personal jurisdiction.  Third-party plaintiffs seek such tailored relief here.

Following entry of the Omniway Judgment (Dkt. 108), the principal claim left to be tried is third-party plaintiffs' claim that Mr. Sharon is "personally liable for [Omniway's] debts, including the Omniway Note."  Dkt. 91 ¶¶ 110, 124.  That is the very claim that Mr. Sharon has worked so hard to frustrate, through his utter disregard of, and misstatements made during, the discovery process.  By his actions, third-party plaintiffs have been denied access to Omniway's corporate records which we believe would have conclusively established his liability.  With that untoward goal now accomplished, Mr. Sharon would have this Court try the case based on the record that he rendered incomplete.  At this stage to allow him to contest his responsibility for this debt would be to reward Mr. Sharon for gaming the system.

The Courts in this Circuit have shown little hesitance in granting such preclusion sanctions, where necessary to remedy the prejudice caused by a party's discovery abuses.  *See, e.g., Funnekotter v. Republic of Zimb.,* 2011 U.S. Dist. Lexis 130363, *11 (S.D.N.Y. Nov. 10, 2011) (holding that, "as a sanction for its failure to respond to Petitioners' discovery requests, the Government of Zimbabwe would be precluded from arguing that the Commercial Entities are not its alter egos"); *Daval Steel Prods. V. M/V Fakredine,* 951 F.2d 1357, 1368 (2d Cir. 1991) ("Had Ekco not intentionally frustrated the discovery process, an adjudication on the merits would have been possible. In view of Ekco's misconduct, the district court justifiably entered an order taking as established the claim whose proper adjudication Ekco deliberately endeavored to frustrate, and precluding Ekco from offering contrary evidence. … the precise requirements of alter ego liability are irrelevant to an assessment of the propriety of the district court's action."); *Lodge v. United Homes LLC,* 787 F. Supp. 2d 247, 263 (E.D.N.Y. 2011) ("The Bayview Defendants' repeated and egregious disregard for their continuing disclosure and discovery obligations, the

-17-

multiple instances of misrepresentation and misconduct, and the duration of the offending conduct warrant the sanction of preclusion in this case.").

As the Second Circuit has explained, a preclusion order is "strong medicine," but "such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators."  *Daval Steel Prods.*, 951 F.2d at 1367. Preclusion enables Rule 37 to act as a credible deterrent "rather than a paper tiger." *Update Art, Inc. v. Modiin Pub, Ltd*., 843 F.2d 67, 71 (2d Cir. 1998) (citation omitted). "Rule 37 sanctions must be applied diligently 'to penalize those whose conduct may be deemed to warrant such a sanction, (and) to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Penthouse Int'l, Ltd. v. Playboy Enter., Inc*., 663 F.2d 371, 386 (2d Cir. 1981), citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-65 (1980). In particular, "where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction…." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

It is true that, in exercising its "wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37" (*Design Strategy, Inc.*, 469 F.3d at 294), a District Court should consider, among other factors, "the efficacy of lesser sanctions."  *Murray v. Mitsubishi Motors of N. Am., Inc.*, 462 Fed. Appx. 88, 90 (2d Cir. 2012) (citation omitted).  At the recent conference, the Court initially inquired as to whether an adverse inference might be crafted that would be able to remedy the prejudice.  Certainly, if that is the strongest sanction available, then third-party plaintiffs request it.  But given the scope and length of misconduct by Mr. Sharon and his attorneys, and the impact that has had not on third-party plaintiffs' discovery efforts, and on the Omniway Judgment issued by this Court, we respectfully submit that such a sanction would be insufficient.  Mr. Sharon should be precluded from denying that which he

-18-

deliberately frustrated: third-party plaintiffs' efforts to discover the truth about Omniway and his financial relationship thereto.

## II. Preclusion Sanctions Are Also Warranted Under The Court's Inherent Powers

While the Federal Rules provide adequate basis for the relief sought herein, it should be noted that the Court has broader, inherent powers to sanction parties for all manner of litigation abuses. "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent powers to manage its own affairs." *Residential Funding Corp.*, 305 F.3d at 106-07. "[T]he fact that there may be a statute or rule which provides a mechanism for imposing sanctions of a particular variety for a specific type of abuse does not limit a court's inherent power to fashion sanctions, even in situations similar or identical to those contemplated by the statute or rules." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1988). Whereas a specific sanction rule or statute may apply "only [to] certain individuals or conduct, the inherent power extends to a full range of litigation abuses." *Chambers v. Nasco*, 501 U.S. 32, 46 (1991). The inherent power exists, in the Supreme Court's words, "to fill in the interstices." *Id.*[8]

In order to exercise these inherent powers, the Court must find that a party and/or his attorneys "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *DLC Mgmt. Corp.*, 163 F.3d at 136, citing *Chambers*, 501 U.S. at 45-46; *see also Oliveri v. Thompson*, 803

---

[8] Rule 11(c)(3) also applies. It provides that the Court may *sua sponte* sanction a party for violating Rule 11(b). *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney … certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . .; (2) the . . . legal contentions are warranted by existing law . . .; [and] (3) the factual contentions have evidentiary support"). Here, the record is replete with filings that would implicate Rule 11: *e.g.*, Omniway's stipulation accepting service, its answering pleading, its Rule 7.1 disclosure. We focus herein on the inherent power only because it is somewhat broader and to avoid duplicative briefing.

F.2d 1265, 1272-73 (2d Cir. 1986) (noting that sanctions under "court's inherent power may be made against an attorney, a party, or both" where non-movant has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons") (citation omitted).

The record is replete with evidence of bad faith here.  Indeed, it allows for only two real possibilities.  Either: (a) Mr. Sharon, both directly and through professionals working under his retention, instructed his attorneys in this case to appear on behalf of Omniway, accept service of process, assert legal and factual defenses, and aggressively litigate the case on its behalf, because Mr. Sharon is Omniway and Omniway is Mr. Sharon, only to falsely deny that fact when called upon to produce Omniway's documents and testify about it under oath; or (b) Mr. Sharon really has nothing to do with Omniway, and his attorneys committed a fraud on the Court when they submitted pleading after pleading with very fact-specific contentions such as that Omniway has "never seen the  original of that Promissory Note."  Exh. 6 Resps. 10-19.  As both Omniway's firms testified that they never consulted with anyone about the company other than Mr. Sharon and his professionals, there is no third possibility.  Either (a) or (b) occurred.

Given the very strong documentary and testimony evidence that Omniway is merely a front company for Mr. Sharon, given that Mr. Sharon himself felt comfortable enough about the facts of Omniway to verify its interrogatory answers, and given that two successive law firms independently concluded that Mr. Sharon was authorizing them to represent Omniway, option (a) is almost certainly what occurred.  None of that is to let Mr. Sharon's attorneys off the hook, as they continued to represent Omniway for several months after Mr. Sharon disclaimed knowledge about the company.  Apparently, even they did not believe him.  (The attorneys' responsibility is addressed more fully in Section III below.)

But for purposes of Mr. Sharon, Courts have found that antics like these constitute bad faith, allowing the Court to use its inherent powers to sanction them accordingly.  In *Nadler v.*

*Princess Hotels Int'l*, 1996 U.S. Dist. Lexis 5740, *9 (S.D.N.Y. Apr. 30, 1996), for example, the Court granted sanctions under its inherent powers where "[d]efendant, by allowing its attorneys to litigate the case for almost a year without emphasizing to the Court or opposing counsel that it was not the proper party, undertook a course of action so completely without merit that a conclusion of bad faith is compelled." *See also, e.g.*, *DLC Mgmt. Corp.*, 163 F.3d at 136 (affirming sanctions against defendants under Court's inherent powers where record reflected "a pattern of behavior which could reasonably be construed as a bad faith effort to thwart plaintiffs' discovery efforts"); *Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 573–75 (S.D.N.Y. 2010) (holding plaintiff liable for sanctions under Court's inherent powers and Rule 37 where documents were withheld during discovery).

Indeed, to the extent that Mr. Sharon and his attorneys wish to maintain their far-fetched position that Mr. Sharon has no involvement with or knowledge of Omniway, then they should explain why all of Omniway's pleadings in this case – filed without consulting anyone other than Mr. Sharon and his professionals – are not a fraud on the Court deserving of a far more severe sanction than sought herein.  Fraud on the Court occurs when a party "has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and his adversary's defense of the action." *McMunn v. Memorial Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002) (citation omitted).  "[W]hen a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process, it can fairly be said that he has forfeited his right to have his claim decided on the merits.  This is the essence of a fraud upon the court." *McMunn*, 191 F. Supp. 2d at 445.

However it is characterized here, at the end of the day, third-party plaintiffs have spent the last two years on a wild goose chase, litigating against an "Omniway" who now denies that is what it is.  In the process, evidence has been lost, judicial resources have been needlessly

expended, and third- party plaintiffs have suffered very real prejudice. This is bad faith, if not fraud, and should be treated accordingly.

## III.   Mr. Sharon's Attorneys[9] Should Be Directed To Reimburse Third-Party Plaintiffs For Their Wasted Legal Fees Under § 1927

28 U.S.C. § 1927 provides that any attorney: "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The instant case would seem to be just what the Congressional drafters had in mind.

"In practice, the 'only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent powers may be made against an attorney, a party, or both.'" *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 144 (2d Cir. 2012) (citation omitted). The Court has discretion to impose such sanctions against either the individual attorneys or the firm as a whole. *See Enmon*, 675 F.3d at 148 (affirming sanction of entire firm under § 1927 and inherent powers where court attributed actions of is founding named partner to entire firm). Also included within § 1927 is the power to sanction for discovery abuses. *See Apex Oil Co. v. Belcher Co. of New York*, 855 F.2d 1009, 1019 (2d Cir. 1988) (affirming the district court's grant of attorneys' fees for moving to compel for complete responses to discovery requests).

Sanctioning an attorney under § 1927 requires the same showing of bad faith as does sanctions under the Court's inherent powers. *Enmon*, 675 F.3d at 144. Bad faith "can be inferred 'when the attorney's actions are so completely without merit as to require the conclusion

---

[9]    For purposes of this motion, references to "Mr. Sharon's attorneys" include both the Wachtel firm, and the four partners and counsel thereof who signed the pleadings and papers and otherwise appeared on Omniway's behalf: William B. Wachtel, Julian D. Schreibman, Elliot Silverman and Walter Stadium.

Case 1:10-cv-04506-SAS-GWG   Document 117   Filed 06/25/12   Page 28 of 31

that they must have been undertaken for some improper purpose such as delay.'" *Vasco v. Operation Rescue National*, 80 F.3d 64, 72 (2d Cir. 1996 ) (*quoting Oliveri*, 803 F.2d at 1273). However, such bad faith can be inferred from conduct. *See In re Ski Train Fire*, 2007 WL 2398697, **1, 5-6 (S.D.N.Y. Aug. 16, 2007) (finding counsel's misrepresentation of the witnesses' knowledge to the Court constituted bad faith allowing for § 1927 sanctions); *Jain v. Ford Motor Credit Co.*, 174 F.R.D. 259, 262-63 (E.D.N.Y. 1997) (finding counsel's failure to promptly and candidly advise the court and opposing counsel of his client's likely unavailability for trial constituted bad faith allowing for § 1927 sanctions); *Ass'n of Holocaust Victims For Restitution of Artwork & Masterpieces v. Bank of Austria Creditanstalt AG*, 2005 WL 2001888, *1, *4-6 (S.D.N.Y. Aug. 19, 2005) (finding counsel misrepresentations in the complaint and his "scattershot pleadings" constituted bad faith allowing for § 1927 sanctions); *Veliz v. Crown Lift Trucks*, 714 F. Supp. 49, 61 (E.D.N.Y. 1989) (sanctioning under § 1927 by dismissing trial counsel's reasoning that he could not be sanctioned because his misrepresentations to the court were in reliance on information obtained from his partner).

Third-party plaintiffs appreciate that much of the rationalization and justification that has ensued in the last few months has been an effort by counsel, as Your Honor suggested, to "fall on their swords." But certainly not all of it. At the deposition of the Wachtel firm, Mr. Wachtel stated that his firm first learned that Mr. Sharon was not a proper source for all things Omniway at his clients' December 2011 deposition, at which Mr. Sharon professed ignorance about the company. Exh. 10, p. 48:14-49:8. Accepting this at face value, counsel still did not act properly upon learning of its client's position. At that point, it should have not only promptly withdrawn its representation of Omniway, but also notified the Court of the issue.

Instead, the Wachtel firm did just the opposite. In January 2012, it served interrogatory answers verified by Mr. Sharon on behalf of Omniway. Exh. 6. In March, it sought leave to

-23-

move for summary judgment on Omniway's behalf, and even threatened third-party plaintiffs with Rule 11 sanctions for daring to continue to pursue claims against Omniway.  Exh. 8.  And in April, it appeared before the Court at a summary judgment conference on Omniway's behalf, arguing for its position until the Court asked how it could do so.  Dkt. 109 p. 9:8-14.

Even when the Court finally sought to shed light on what transpired, the Wachtel firm continued to try to shroud the matter in darkness.  The firm initially refused to comply with the subpoenas the Court had instructed at the April 10, 2012 conference, necessitating further motion practice and a formal Order from the Court.  Dkt. 111. *See Apex Oil*, 855 F.2d at 1020 (imposing § 1927 sanctions for attorneys' fees where defendant's counsel refused to comply with discovery requests until plaintiff's counsel made a motion to compel). And, when the Wachtel firm finally did appear for its Court-ordered deposition, Mr. Wachtel, who was designated as the firm's Rule 30(b)(6) witness, testified that he "did not know" to many of the most basic questions for which the Court directed a deposition be held.   Exh. 10, *e.g.*, p. 17:20-25.  He further testified that he had not consulted with three of the four other attorneys at the Wachtel firm who worked on this matter.  *Id.* pp. 22:10:25-23:1-140.  This is a violation in its own right, as a Rule 30(b)(6) witness must be prepared to testify as to all topics requested. *See Reilly v. Natwest Mkts. Group, Inc*., 181 F.3d 253, 268 (2d Cir. 1999) ("When a party fails to comply with Rule 30(b)(6), Rule 37 allows courts to impose various sanctions, including preclusion of evidence.").

Lastly, the Wachtel firm failed to obtain a written retainer agreement from any of its clients before taking on this representation.  Had it done so, that might have prevented this entire mess.  Instead, it is essentially trying to capitalize from the lack of a retainer.

The Wachtel firm should know better.  It is not a small firm scrambling to keep up with a heavy case load.  This is a mid-sized firm, founded in 1984, with 35 attorneys, with offices in New York, California, and Italy.  Exh. 10 p. 10:1-16.  Mr. Wachtel, the first named partner, is a

graduate of Columbia Law School who has practiced for 33 years.  Mr. Schreibman, the Wachtel

partner who signed, *inter alia*, Omniway's Rule 7.1 disclosure, is the Democratic nominee for

the 15th Congressional District.  *Id.* p. 1:22; Dkt. 52.  Messrs. Stasiuk and Silverman, who

engaged in the meet-and-confer at which representations about Omniway's lack of documents

were made, are both highly experienced attorneys as well.

> As one Court put it when sanctioning counsel under § 1927:

> Attorneys are officers of the court and their first duty is to the administration of
> justice.  Whenever an attorney's duties to his client conflict with those he owes to
> the public as an officer of the court, he must give precedence to his duty to the
> public.  Any other view would run counter to the principled system of justice.

*Itel Containers Int'l Corp. v. Puerto Rico Marine Mgmt. Inc.*, 108 F.R.D. 96, 104 (D.N.J. 1985).

That was not done here.  Instead, Mr. Sharon's lawyers acted vexatiously throughout the

course of this litigation, and third-party plaintiffs have borne the cost.  Out of fairness, counsel

should be directed to reimburse third-party plaintiffs for that portion of their attorney's fees and

expenses which is attributable to the § 1927 violations.  We request the Court refer the matter for

determination of an appropriate reimbursement amount, and suggest that Judge Gorenstein, who

oversaw the discovery process case, might be the most appropriate fact-finder.

## CONCLUSION

For all the foregoing reasons, the motion should be granted, third-party defendant Gilad

Sharon should be precluded from denying his responsibility for the debt underlying the Omniway

Judgment, judgment should be entered in favor of third-party plaintiff TPR, attorney's fees and

costs should be awarded to third-party plaintiffs pursuant to 28 U.S.C. § 1927 in an amount to be

determined following an evidentiary determination by Magistrate or Referee, and final judgment

should be awarded, consistent with the foregoing, concluding the case.

Dated:  New York, New York
        June 25, 2012                                DUANE MORRIS LLP


                                                    By:   s/John Dellaportas
                                                          John Dellaportas
                                                          Evangelos Michailidis
                                                          DUANE MORRIS LLP
                                                          1540 Broadway
                                                          New York, NY 10036
                                                          (212) 692-1000

                                                          *Attorneys for Third-Party
                                                          Plaintiffs Sagi Genger and TPR
                                                          Investment Associates, Inc.*