UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
                                                  :
SAGI GENGER and TPR                               :
INVESTMENT ASSOCIATES, INC.,                      :
on behalf of AG PROPERTIES CO.,                   :
                                                  :
        Third-Party Plaintiffs,                   :
                                                  :      **OPINION AND ORDER**
        - against -                               :
                                                  :      **10 Civ. 4506 (SAS)**
GILAD SHARON,                                     :
                                                  :
        Third-Party Defendant.                    :
------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

# I.      INTRODUCTION

Sagi Genger ("Genger") and TPR Investment Associates, Inc.

(together "third-party plaintiffs") bring this motion for sanctions against Gilad

Sharon and his counsel, Wachtel Masyr & Missry LLP ("Wachtel"), for litigating

on behalf of dissolved entity Omniway Limited ("Omniway"), impeding discovery

efforts regarding Omniway and then, after over a year, disavowing all knowledge

of or authority over Omniway.  Third-party plaintiffs seek an order precluding

Sharon from denying responsibility for a judgment that Omniway is liable to third-

party plaintiffs and requiring Wachtel to pay attorneys' fees and costs incurred as a

result of their unauthorized representation of Omniway.[1]

## II.    BACKGROUND

### A.    The Underlying Dispute

The merits of the litigation are discussed only insofar as they are helpful to understanding the instant sanctions motion.  Briefly, the lawsuit arises out of a Canadian real estate venture (AG Properties) between Sharon and Genger's father, Arie Genger.[2]  Genger alleges that Sharon held his fifty percent interest through Omniway, a Cypriot company, which purchased the stake with a $1.25 million promissory note (the "Omniway Note") secured by its shares in AG Properties.[3]  Sharon claims that he invested $25,000 in the venture, the same amount that Arie contributed, through Lerner Manor Trusteeships Limited ("Lerner"), an Israeli company.[4]  Genger took over as President of AG Properties, in 2004 or 2005, but was not party to the initial transactions.[5]  In 2005, Sharon sold

---

[1]    *See* Third-Party Plaintiffs' Memorandum of Law in Support of Motion for Sanctions ("Pl. Sanctions Mem.") at 1.

[2]    *See* Amended Answer and Third Amended Third-Party Complaint ("Compl.") ¶ 101.

[3]    *See id.*

[4]    *See* 7/25/12 Declaration of Gilad Sharon ("Sharon Decl.") ¶¶ 3-4; 6, in support of Third-Party Defendant Gilad Sharon's Memorandum of Law in Opposition to Motion for Sanctions ("Def. Sanctions Opp.").

[5]    *See* Compl. ¶¶ 20, 112.

2

his shares in AG Properties and walked away with approximately $1.5 million.[6]

When AG Properties was unable to pay its debts, the company's largest creditor, Vladimir Gusinski, sued AG Properties in New York state court and won a judgment for $4,357,551.99.[7]  Gusinski then sued Genger individually in this Court.[8]  Genger filed a third-party complaint against Sharon, Omniway and Lerner, seeking contribution or indemnification.[9]  The action between Gusinski and Genger settled,[10] and the third-party suit proceeded.  The source and amount of Sharon's investment in AG Properties is the crux of the dispute.

**B.  Facts Regarding Sharon's Relationship to Omniway**

Sharon's purported ignorance regarding Omniway has resulted in a dearth of information.  However, testimony from Sharon's lawyers, accountants, business partner, and Sharon himself all point to Omniway being one hundred

---

[6]  *See* Pl. Sanctions Mem. at 1; Def. Sanctions Opp. at 4.

[7]  Compl. ¶ 2.

[8]  *See* Complaint of Vladimir Gusinsky Against Sagi Genger [Docket No. 1].

[9]  *See* Answer and Third-Party Complaint [Docket No. 7]. The amended third-party complaint added a second cause of action for "Enforcement of Omniway Note." Compl. ¶¶ 121-27.

[10]  *See* Stipulation of Dismissal [Docket No. 57].

percent owned and controlled by Sharon throughout its existence.[11]

Sharon testified that he believed Omniway was "my Accountant's idea of having uh, such a company as a structure for my holdings in the Canadian venture,"[12] and that "Omniway may have been incorporated on my behalf."[13] When shown the purported Omniway Note and related documents, Sharon stated, "I let my professional do that. . . . I didn't care about those documents.  I never saw them before or if I did, I don't remember it."[14]  He testified that he "never used Omniway to transact any business."[15]  Sharon claims that in response to discovery requests, he "searched his own records, and contacted his Israeli professional advisors, but no records relating to Omniway were found."[16]  With regard to authorizing legal representation of Omniway in this lawsuit, Sharon stated that he

---

[11]     Omniway was dissolved in 2004.  *See* Omniway Limited Certificate, Ex. 2 to 7/25/12 Declaration of Polyvios G. Polyviou, Cypriot law authority, in Support of Third-Party Defendant Gilad Sharon's Memorandum of Law in Opposition to Motion for Sanctions ("Polyviou Decl.").

[12]     12/14/11 Deposition of Gilad Sharon ("Sharon Dep.") at 53:3-7, Ex. 5 to 6/25/12 Declaration of John Dellaportas in Support of Motion for Sanctions ("Dellaportas Decl.").

[13]     Sharon Decl. ¶ 5.

[14]     Sharon Dep. at 144:5-10.

[15]     *Id.* at 53:10.

[16]     Sharon Decl. ¶ 11.

did not "recall any discussion about representing Omniway, but I intended that these lawyers represent my interests in this lawsuit."[17]

The lead accountant for Raines & Fischer, LLP, the accounting firm for the AG Properties venture, testified that "Omniway Limited is a corporation that I believe is owned by Gilad Sharon.  Whether it's directly or indirectly I don't know, but I know that is certainly the context in which I know the name."[18]  Arie Genger, Sharon's original partner in the venture, also testified regarding Omniway: "To me it's all Gilad."[19]

Sharon's current counsel, William Wachtel, testified that conversations with Sharon and his Israeli counsel were the sole basis for his belief that Wachtel had authority to represent Omniway.[20]  Wachtel explained that he believed he had authorization to represent Omniway based on his "understanding that, at least under New York law, a shareholder of a dissolved corporation may act

---

[17]      *Id.* ¶¶ 9, 11.

[18]      3/19/12 Deposition of William Fischer at 31:13-15, 43:12-18, Ex. 2 to Dellaportas Decl.

[19]      2/23/12 Deposition of Arie Genger at 28:21-22, Ex. 7 to Dellaportas Decl.

[20]      5/21/12 Deposition of William B. Wachtel ("Wachtel Dep.") at 15:15-23, Ex. 10 to Dellaportas Decl.

for that corporation in litigation brought against it."[21]  Sharon's former counsel at Mitchell Silberberg & Knupp LLP, testified that he appeared on behalf of Omniway because "I explained the uncertainty with respect to the status of Omniway, there was a discussion about what the consequences of a default against Omniway might be, and ultimately it was left to me to determine how to best protect Mr. Gilad Sharon's rights with respect to the Omniway status issue."[22]

### C.  Facts Regarding Wachtel's Representation of Omniway

As with Sharon's relationship to Omniway, the details surrounding Wachtel's representation of Omniway are hazy but, where available, undisputed. On January 13, 2011, the law firm of Mitchell Silberberg entered separate appearances on behalf of Sharon and Omniway.[23]  On March 25, 2011, Wachtel was substituted as counsel for Sharon, although not explicitly for Omniway.[24] From the outset Wachtel actively litigated on behalf of all third-party defendants.

---

[21]     7/25/12 Declaration of William B. Wachtel ("Wachtel Decl.") ¶ 4, in support of Def. Sanctions Opp.

[22]     5/16/12 Deposition of Paul Montclare ("Montclare Dep.") at 84:15-23, Ex. 9 to Dellaportas Decl.

[23]     *See* Notices of Appearance [Docket Nos. 34 and 36].  Genger does not seek sanctions against Mitchell Silberberg.  *See* Pl. Sanctions Mem. at 9 n. 4.

[24]     *See* 3/25/11 Stipulation [Docket No. 46].

Its first act was to accept service on behalf of all three defendants.[25]  On April 14, 2011, Wachtel filed a Rule 7.1 Corporate Disclosure Statement on behalf of Omniway and Lerner, naming Wachtel as counsel for both.[26]  On April 14, 2011 and December 5, 2011 respectively, Wachtel filed answers on behalf of all third-party defendants, both of which asserted affirmative defenses relating to Omniway.[27]

During discovery, Wachtel submitted Rule 26(a) disclosures representing that defendants were in possession of "documents concerning the Purported Omniway Note" and that those documents would be produced in the course of the litigation.[28]  In a December 12, 2011 telephone conference, Wachtel "agreed to make inquiry as to the existence and location of Omniway's documents responsive to your requests and to let you know if they exist and, if so, when they will be produced."[29]  Just two days later, Sharon testified in his deposition, "I don't

---

[25]     *See* 3/30/11 Stipulation [Docket No. 50].

[26]     *See* Rule 7.1 Statement [Docket No. 52].

[27]     *See* Answer to Compl. ¶¶ 56-66 [Docket No. 53], Answer and Affirmative Defenses of Third-Party Defendants ¶¶ 56-66  [Docket No. 94].

[28]     *See* Joint Rule 26A Disclosures of Defendants Gilad Sharon, Lerner Manor Trusteeships, Ltd and Omniway Limited ("26A Disclosures"), Ex. 4 to Dellaportas Decl.

[29]     12/13/11 Email from Eliot Silverman to John Dellaportas (discussing telephone conference), Ex. 3 to Dellaportas Decl.

know if [Omniway] was ever formed."[30]  William Wachtel later testified that this was the first time he heard Sharon claim to have no interest in Omniway.[31]

Notwithstanding Sharon's explicit uncertainty as to Omniway's existence, on January 17, 2012, Wachtel submitted Responses to Plaintiffs' First Set of Interrogatories, which asserted on behalf of all third-party defendants that they were not in possession of, nor had they ever seen the original Omniway Note.[32]  On February 14, 2012, in response to Genger's motion to compel Omniway to produce a 30(b)(6) witness, Wachtel informed Magistrate Judge Gabriel Gorenstein that the firm had "entered an appearance in this action for Omniway, even though Omniway does not now exist (and Mr. Sharon does not know if it ever existed)."[33]  Yet Wachtel continued to actively litigate on Omniway's behalf as late as March 26, 2012, when it threatened to move for Rule 11(b) sanctions on behalf of all third-party defendants and, on the same day sought

---

[30]     Sharon Dep. at 53:7-8.

[31]     *See* Wachtel Dep. at 48:13-49:8.

[32]     *See* Third Party Defendants' Responses to Third Party Plaintiffs' First Set of Interrogatories, Ex. 6 to Dellaportas Decl.

[33]     2/14/12 Letter from Elliot Silverman to Magistrate Judge Gabriel W. Gorenstein [Docket No. 102].

leave to move for summary judgment.[34]  It was only during the April 10, 2012

hearing on summary judgment that Wachtel withdrew as counsel to Omniway, at

the Court's suggestion, after William Wachtel announced that "Omniway does not

exist.  We do not know if it ever existed.  We are aware of no one who represented

Omniway."[35]

Following Wachtel's withdrawal from representing Omniway, I

entered a default judgment against Omniway on May 1, 2012.  On May 8, 2012, I

ordered the deposition of Wachtel on the question of "how and why [Wachtel]

represented to Genger and this Court, for approximately one year, that it was

counsel to Omniway."  I explained that "[t]he relationship between Sharon and

Omniway implicates questions of alter ego status" and "Genger and this Court

have the right to know who instructed Wachtel to represent Omniway."[36]  The

deposition revealed that the only thing Wachtel did to "ensure that anything we

said in any pleadings on behalf of Omniway was accurate or inaccurate" was to

---

[34]     *See* 3/26/12 Letter from John Dellaportas to the Court, Ex. 8 to Dellaportas Decl.

[35]     4/10/12 Transcript at 4:2-3.  *See also* Wachtel Decl. ¶ 9 ("I immediately acceded to the Court's suggestion and withdrew as counsel for Omniway.").

[36]     5/8/12 Order [Docket No. 111].

9

"communicate[] with Mr. Sharon, and in turn his professionals in Israel."[37]

### D.  Motion for Sanctions

On June 25, 2012, third-party plaintiffs moved for sanctions against Sharon and Wachtel for representing that they were authorized to act on behalf of Omniway and then reversing course and denying any relationship to or authority over Omniway.[38]  They request sanctions under Rules 26(e) and 37(c) of the Federal Rules of Civil Procedure, section 1927 of Title 28 of the United States Code, and the Court's inherent power.[39]

Third-party plaintiffs initially requested an order: "(a) precluding Mr. Sharon from denying his responsibility for the debt underlying the judgment entered in this case against third-party defendant [Omniway]; and (b) requiring Mr. Sharon's attorneys to reimburse third-party plaintiffs for their attorney's fees and costs incurred as a direct result of the sanctionable conduct."[40]  However, after

---

[37]  Wachtel Dep. at 32:15-22.

[38]  *See* Pl. Sanctions Mem. at 4.

[39]  *See* 6/25/12 Notice of Motion for Sanctions.  The Memorandum of Law also notes that Rule 11(c)(3), which authorizes the Court sua sponte to "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)," applies here.  *See* Pl. Sanctions Mem. at 19 n. 8.

[40]  Pl. Sanctions Mem. at 1.

revelations about Cypriot law called into question the validity of the default judgment against Omniway, third-party plaintiffs submitted a letter at the Court's prompting, modifying their motion to request that Sharon "be precluded from contending that the note was invalid," and seeking "an Order holding Mr. Sharon and his lawyers jointly and severally liable for the attorney's fees third party plaintiffs incurred in this case."[41]

## III.   APPLICABLE LAW

### A.   Enforceability of the Default Judgment

The preliminary question of whether the default judgment against Omniway is valid bears on the impact of the requested sanction precluding Sharon from contesting that he is liable for a judgment against Omniway.  If the default judgment stands, such a sanction would be case terminating.  If the default judgment is invalid, holding Sharon liable for any judgment against Omniway still permits him to litigate the merits of the allegations against both him and Omniway.

#### 1.   Dissolved Corporation's Amenability to Default Judgment

Federal Rule of Civil Procedure 17(b) provides that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was

---

[41]     8/20/12 Letter from John Dellaportas to the Court ("8/20/12 Dellaportas Letter") at 3.

organized."[42]  Omniway was incorporated under the laws of Cyprus, therefore

Cypriot law governs whether Omniway was amenable to suit at the time that

Genger filed his third-party suit and thereafter.  According to Sharon's Cypriot law

expert, "[u]nder the laws of Cyprus, when a company is stricken from the Register

of Companies . . . the company is dissolved" meaning it "is no longer in existence"

and "cannot be sued."[43]  Thus, "before such a company can be sued by anyone

claiming to be a creditor, that creditor must obtain an order from the Courts of

Cyprus ordering that the company be restored to the Register of Companies."[44]

### 2.    Liability of Agents of a Dissolved Corporation

Generally, "[a] federal court sitting in diversity . . .  must apply the

choice of law rules of the forum state."[45]  New York choice of law principles

require a court to "apply the [agency] law of the state with the most significant

---

[42]    "Rule 17(b) applies 'to dissolved corporations as well as existing corporations.'"  *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 382 (S.D.N.Y. 1998), *aff'd* 173 F.3d 843 (2d Cir. 1999) (quotation omitted).

[43]    Polyviou Decl. ¶ 3.  *Accord Domino Media*, 9 F. Supp. 2d at 382 ("Under the common law, when a corporation was dissolved it was as a deceased person, completely unable to file or to defend against lawsuits.").

[44]    Polyviou Decl. ¶ 3; *see also* Cyprus' Law of Companies, Ex. 3 to Polyviou Decl.

[45]    *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (quoting *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989).

relationship with the particular issue in conflict."[46]  Because the alleged agency

relationship between Sharon and his counsel and Omniway occurred in the course

of litigation in New York, New York agency law governs.  Under New York law,

an unauthorized agent who "purport[s] to act on behalf of a corporation which had

neither a de jure nor a de facto existence . . . [is] personally responsible for the

obligations which he incurred."[47]

### B.    Sanctions[48]

#### 1.    Rule 37(c) Sanctions

Rule 26(e) of the Federal Rules of Civil Procedure states, in relevant

part,

> [a] party who has . . . responded to an interrogatory, request for
> production, or request for admission – must supplement or correct
> its disclosure or response: (A) in a timely manner if the party
> learns that in some material respect the disclosure or response is

---

[46]    *Indosuez Int'l Fin. B.V. v. National Reserve Bank,* 98 N.Y.2d 238, 245 (2002).

[47]    *Brandes Meat Corp. v. Cromer*, 537 N.Y.S.2d 177, 178 (2d Dep't 1989); *see also Lodato v. Greyhawk North Am., LLC*, 834 N.Y.S.2d 237, 239 (2d Dep't 2007).

[48]    Third-party plaintiffs also invoke this court's "inherent power" to sanction "all manner of litigation abuses."  Pl. Sanctions Mem. at 19.  Courts should avoid using such powers when another rule – in this case Rule 37 and 28 U.S.C. § 1927 – adequately address the sanctionable conduct.  *See Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 n. 7 (2d Cir. 2010).  Therefore, I do not discuss "inherent power" sanctions in this opinion.

incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Rule 37(c) authorizes sanctions for a party's failure "to provide information or identify a witness as required by Rule 26(a) or (e)" unless the violation was "substantially justified or is harmless."  In determining whether Rule 37(c) sanctions are justified, the Court must consider: (1) the party's explanation for the failure to disclose or supplement; (2) the importance of the evidence sought to be precluded; (3) the prejudice suffered by the opposing party; and (4) the possibility of a continuance.[49]

Permissible sanctions include "any of the orders listed in Rule 37(b)(2)(A)(i)-(vi),"[50] which include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

---

[49]   *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).

[50]   Fed. R. Civ. P. 37(c)(1)(C).  Rule 37 also authorizes the court to "order payment of reasonable expenses, including attorney's fees, caused by the failure [to disclose or supplement discovery requests]."  *Id.* 37(c)(1)(A).

(vi) rendering a default judgment against the disobedient party.[51]

The purposes of disciplinary sanctions pursuant to Rule 37 are threefold.  "First, they ensure that a party will not benefit from its own failure to comply.  Second, they are specific deterrents and seek to obtain compliance with the particular order issued.  Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation . . . ."[52]

Four factors guide a district court's exercise of its discretion to impose sanctions under Rule 37(b): "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance."[53]  "[T]hese factors are not exclusive" and the court has "wide discretion in imposing sanctions under Rule 37"

---

[51]     Although third-party plaintiffs did not expressly request a default judgment, their request that Sharon "should be precluded from contending that the note was invalid" is the equivalent of a request for a default judgment.  8/20/12 Dellaportas Letter.

[52]     *Update Art, Inc., v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).

[53]     *Southern New England Tel. Co.,* 624 F.3d at 144 (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)).

as long as the orders are "just."[54]  However, Rule 37 sanctions must be "specifically related to the particular 'claim' which was at issue in the order to provide discovery."[55]

### 2. Sanctions Under 28 U.S.C. § 1927

Section 1927 provides that any "attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  "Unlike Rule 11's 'objectively unreasonable' test, § 1927 sanctions are properly imposed only upon a 'clear showing of bad faith.'"[56]  In other words, "an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."[57]

## IV.  DISCUSSION

### A.  The Default Judgment Against Omniway Is Not Enforceable

---

[54]     *Id.* (quotations omitted).

[55]     *Id.* (quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)).

[56]     *McMahon v. Shearson/Am. Express, Inc.,* 896 F.2d 17, 23 (2d Cir. 1990) (abrogated on other grounds) (quotations omitted).

[57]     *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).  *Accord Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012).

Under Cypriot law, Omniway lacked the capacity to be sued.[58]  The

fact that Sharon and his attorneys purported to represent Omniway for sixteen

months prior to the entry of the default judgment is irrelevant because Cypriot law

provides that the only way in which a dissolved corporation may be sued is to

restore it to the Register of Companies.[59]  Under Cypriot law, neither Sharon nor

his attorneys were authorized to accept service on behalf of Omniway and

therefore this Court lacked the power to enter a default judgment against it.[60]

Nor can Sharon be held liable for the invalid default judgment as an

agent of Omniway on the theory that "after a company has dissolved, the

unauthorized agent becomes personally liable for any obligations which the

Corporation thereafter incurred."[61]  When the default judgment was entered,

---

[58]     *See* Polyviou Decl. ¶ 3 ("[A] company stricken from the Register of
Companies and then dissolved cannot be sued.").  *See also Domino Media*, 9 F.
Supp. 2d at 385 (discussing common law); 19 Am. Jur. 2d Corporations § 2497
(2012) ("In the absence of a statutory provision to the contrary, a judgment
recovered against a corporation after its dissolution is regarded as a nullity.").

[59]     *See Polyviou Decl.*, Ex. 3.  *See also* 19 Am. Jur. 2d Corporations §
2494 ("Statutes may specifically prescribe the method of service on a dissolved
corporation.").

[60]     Although it is true that dissolution of a Cypriot entity has no bearing
on the "liability, if any, of every director, managing officer and member of the
company," Polyviou Decl., Ex. 3, this default was entered against the corporation
itself, not Sharon.

[61]     *See* 8/20/12 Dellaportas Letter at 3 (quotation omitted).

Wachtel had explicitly disaffirmed its authority to represent Omniway, and Sharon similarly denied knowledge of or authority over Omniway. If, in fact, Wachtel and Sharon had still been acting as agents of Omniway, the Court would not have entered a default judgment because Omniway would have been represented, and no default would have occurred.

### B.    Sanctions Against Sharon

There is no question that Sharon violated Rule 26(e) by "respond[ing] to [interrogatories and] request[s] for production" regarding and on behalf of Omniway, and failing to "correct [his] disclosure or response . . . in a timely manner." Sharon should have disclosed at the outset, and certainly during the ensuing year of litigation, that he was not authorized to litigate on Omniway's behalf and could not provide discovery regarding Omniway.

Rule 37(c) sanctions are warranted under the Second Circuit's four-factor test.[62] Sharon has offered no justification for this failure. The requested information was directly relevant to the key issues in the case – the validity of the Omniway Note, and Sharon's liability for a judgment against Omniway. This failure has caused considerable delay and cannot be considered harmless. The just sanction is one of preclusion under Rule 37(b)(2)(A)(ii) with respect to the matters

---

[62]    *See Design Strategy, Inc.*, 469 F.3d at 296 (listing factors).

on which Sharon attempted to manipulate discovery – his knowledge about and association with Omniway.

### 1. Sharon Is Precluded from Arguing that He Is Not Liable for Any Subsequent Judgment Against Omniway

For the first eleven months of this litigation, every action Sharon took suggested that his interests were directly aligned with Omniway's and that he was authorized to litigate on its behalf. Although his attorneys declined to say that Sharon explicitly authorized them to represent Omniway, they have provided no other explanation for their belief that they had that authority.[63] Given that Sharon litigated as essentially one entity with Omniway for a year, to permit him to now disavow that connection would reward him for his lack of transparency and, more likely, active misrepresentation regarding his relationship with Omniway (and relatedly, Omniway's relationship to the AG Properties venture). Thus, Sharon is precluded from contesting that he is the alter ego of Omniway and, as such, is liable for its acts and obligations.

### 2. Sharon Is Precluded from Testifying Regarding the Existence of the Omniway Note

Third-party plaintiffs also request that because "Mr. Sharon sabotaged [discovery regarding Omniway] . . . he should be precluded from contending that

---

[63]   *See* Wachtel Dep. at 15:15-23; Montclare Dep. at 84:15-23.

the [Omniway Note] is invalid."[64]  This would be the equivalent of a default

judgment which, due to the preference "that litigation disputes be resolved on the

merits," is to be used as a last resort.[65]  While Sharon has been anything but

forthcoming about his relationship with Omniway and its role in the AG Properties

venture, he has consistently testified that he invested in AG Properties through

Lerner, and that the Omniway Note was never tendered.  While the parties should

litigate this issue on the merits, in light of his professed ignorance and disinterest in

"that legal stuff," Sharon will not be permitted to testify that the Omniway note

was never tendered.

       This narrowly tailored sanction relates directly to Sharon's mid-

litigation shift to the position that he has no information about Omniway or access

to the Omniway records themselves – a shift that is the basis for the instant

sanctions motion.  Sharon will still be permitted to argue that "[u]nder the Best

Evidence Rule, a duplicate of [the Omniway Note] is not admissible in evidence"

where "a genuine question is raised about the original's authenticity."[66]  He will

not, however, be permitted to use his own testimony to create that "genuine issue."

---

[64]     8/20/12 Dellaportas Letter at 2.

[65]     *Marfia v. T.C. Ziraat Bankasi*, 100 F.3d 243, 249 (2d Cir. 1996)
(citing cases).

[66]     Def. Sanctions Opp. at 9-10.

### 3.      These Sanctions Satisfy the Purposes of Rule 37

The aforementioned sanctions serve the purposes of Rule 37.  They seek to prevent Sharon from benefitting from his inconsistent representations about Omniway throughout the litigation, depending on what he believed best served his interests.  And while these sanctions permit the litigation to proceed on the merits, they curtail Sharon's ability to continue to engage in such gamesmanship.[67]

In addition, while it is not necessary that all four factors governing imposition of Rule 37(b) sanctions are satisfied, in this case they are.[68]  *First,* Sharon's obstruction of efforts to obtain information about Omniway was willful and done to prevent a finding of liability against him personally for the judgment against AG Properties.  *Second*, permitting Sharon to argue that he is not liable for Omniway's debts, or to testify that the Omniway note was never tendered after swearing that he knows nothing about Omniway, would permit precisely what Rule 37(b) sanctions seek to prevent – rewarding Sharon for his dilatory and duplicitous litigation tactics.  In fact, these sanctions are quite moderate given that Sharon and

---

[67]      *See Update Art, Inc.*, 843 F.2d at 71 (purposes of sanctions are to prevent the sanctioned party from benefitting from the wrongful conduct and to deter further non-compliance in the litigation and in the future).

[68]      *See Southern New England Tel. Co.,* 624 F.3d at 144 (discussing factors for Rule 37(b) sanctions).

his attorneys consented to a default judgment against Omniway.[69]  *Third,* Sharon

misrepresented, and permitted his attorneys to misrepresent that he had knowledge

pertaining to Omniway's role in the litigation for *over a year* before he disavowed

all knowledge of or responsibility for Omniway.  For example, Sharon submitted

Rule 26(a) disclosures representing that defendants were in possession of

"documents concerning the Purported Omniway Note."  Testimony establishes that

Sharon knew, or could have determined Omniway's status from the outset of the

lawsuit.  *Fourth*, Sharon and his attorneys "cannot seriously contend that they were

not on notice of their discovery obligations or of the [potential] consequences of

their noncompliance."[70]  It is easily foreseeable as a matter of law that by litigating

on behalf of an entity which, by everyone's testimony, was one hundred percent

associated with him, Sharon would be bound by a judgment against that entity.

Similarly, with respect to the sanction barring Sharon from testifying regarding the

Omniway Note, it is foreseeable that he would be bound by his own testimony that

he knows nothing about Omniway.  Therefore, while this Court did not warn

Sharon of the possibility of these particular sanctions, the results could have been

readily anticipated.

---

[69]     Whether the default was valid as a matter of law is a separate question
from whether a default against Sharon is an appropriate sanction.

[70]     *Southern New England Tel. Co.,* 624 F.3d at 148.

### C.    Sanctions Against Wachtel

Because third-party plaintiffs only request sanctions against Wachtel under 28 U.S.C. § 1927 and the Court's "inherent powers," any sanction requires a finding of "bad faith, *i.e.* motivated by improper purposes such as harassment or delay."[71]  There is no question that Wachtel exercised extremely poor judgment in representing Omniway without first ascertaining whether it could be sued and, equally importantly, without securing a retainer from someone authorized to represent Omniway.  However, the record suggests that Wachtel believed, perhaps with good reason, that Sharon was authorized to represent Omniway.  Particularly in light of the fact that Wachtel took over the case from Mitchell Silberberg, which was purportedly representing Omniway, there is no indication that the initial representation was undertaken in bad faith.  Moreover, Wachtel's acceptance of service on Omniway's behalf, while wrongful, appears to have been done with a view to expediting, not delaying the proceedings.

It went beyond poor judgment, however, when Wachtel continued to litigate on behalf of Omniway – including moving for Rule 11(b) sanctions and summary judgment –  for five months after Sharon explicitly denied having an

---

[71]    *Enmon*, 675 F.3d at 143. "[B]y its express terms, Rule 37(c) applies only to a party," not to attorneys. *Apex Oil Co. v. Belcher Co. of N. Y., Inc.*, 855 F.2d 1009, 1014 (2d Cir. 1988).

interest in Omniway in his December 2011 deposition.  It was not until this Court raised the issue in the conference on summary judgment that Wachtel withdrew as counsel for Omniway.[72]  In the absence of authorization from Sharon, continuing to represent Omniway was "so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose such as delay."[73] Wachtel's failure to provide any justification in the court-ordered deposition on the question of their authority to represent Omniway confirms this conclusion.  Thus, Wachtel is directed to pay all "excess costs, expenses, and attorneys' fees reasonably incurred"[74] from December 12, 2011 when Sharon disavowed responsibility for Omniway, through the date of this Order.

In addition, Wachtel recognized that an appropriate sanction for erroneously representing Omniway is to "require us to incur the expenses involved with Omniway's reinstatement."[75]  This Court agrees.

## V.   CONCLUSION

For the foregoing reasons, Gilad Sharon is precluded from denying

---

[72]   *See* Wachtel Decl. ¶ 9 ("I immediately acceded to the Court's suggestion and withdrew as counsel for Omniway.").

[73]   *Oliveri*, 803 F.2d at 1273.

[74]   28 U.S.C. § 1927.

[75]   8/20/12 Letter from William B. Wachtel to the Court.

responsibility for any judgment that Omniway is liable to third-party plaintiffs and from testifying regarding the existence of the Omniway Note.  Wachtel is directed to pay attorneys' fees and costs from December 12, 2011 through the date of this Order, and any costs of reinstating and seeking further discovery from Omniway.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       September 5, 2012
             New York, New York

25

**-Appearances-**

**For Third-Party Plaintiffs:**

John Dellaportas, Esq.
Evangelos Michailidis, Esq.
Duane Morris, LLP
1540 Broadway
New York, New York 10036
(212) 692-1000

**For Third-Party Defendant:**

William B. Wachtel, Esq.
Julian D. Schreibman, Esq.
Elliot Silverman, Esq.
Wachtel Masyr & Missry LLP
One Dag Hammarskjold Plaza
885 Second Avenue, 47th Floor
New York, New York 10017
(212) 909-9500