UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X
                                 :

SAGI GENGER and TPR          :
INVESTMENT ASSOCIATES, INC.,  :
on behalf of AG PROPERTIES CO.,  :
                                 :

       Third-Party Plaintiffs,    :

       - against -        :

GILAD SHARON,              :

       Third-Party Defendant.   :
-------------------------------------------------- X

**OPINION AND ORDER**

**10 Civ. 4506 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

       Sagi Genger ("Genger") and TPR Investment Associates, Inc. ("TPR," together "third-party plaintiffs") bring this action seeking enforcement of a promissory note and contribution and/or indemnification against third-party defendant Gilad Sharon. Sharon now moves for summary judgment seeking to dismiss the third-party plaintiffs' complaint in its entirety on the ground that the claims are precluded by the final judgment in a state court case involving the same parties. For the following reasons, the motion for summary judgment is denied.

## II. BACKGROUND

       This lawsuit arises out of a Canadian real estate venture ("AG

1

Properties") between Gilad Sharon and Sagi Genger's father, Arie Genger.[1]  In 2001, AG Properties was incorporated in Nova Scotia.[2]  Arie Genger served as its sole director.[3]  Later in 2001, AG Holdings, another corporation under the sole directorship of Arie Genger, acquired all of the shares of stock in AG Properties.[4]  During 2001 and 2002, AG Properties acquired the entire beneficial interest in two pieces of real property located in Montreal, Canada (the "Durocher" and "Lincoln" properties).[5]  TPR, a Delaware corporation beneficially owned at the time by Sagi Genger and other members of the Genger family, provided AG Holdings the mezzanine debt financing necessary to acquire the property.[6]  The properties were placed in trust in 2002 (the "Lincoln" and "Durocher" Trusts).[7]

Genger now alleges that Sharon held a fifty percent interest in AG

---

[1]     *See* Amended Answer and Third Amended Third-Party Complaint ("Compl.") ¶ 101.

[2]     *See id.* ¶¶ 95-96.

[3]     *See id.*

[4]     *See id.* ¶¶ 96-98.

[5]     *See id.* ¶ 99.

[6]     *See id.* ¶ 100.

[7]     *See id.* ¶ 105.

Properties through Omniway, a Cypriot company.[8]  Genger alleges that Sharon

purchased the stake with a $1.25 million promissory note (the "Omniway Note")

secured by his shares in AG Properties.[9]  The Omniway Note was executed on

February 6, 2002.[10]  The Note provided that the principal sum would be paid in

three annual installments of $125,000 on July 24, 2008, July 24, 2009, and July 24,

2010, with the outstanding principal sum due on July 24, 2011.[11]  Additionally,

interest of 6.5% per year was due annually beginning on July 24, 2003.[12]

The Omniway Note contained an acceleration clause allowing AG

Properties to recover the entire unpaid principal amount and all other amounts

payable in an Event of Default :

> Upon the occurrence of any Event of Default, the entire unpaid
> principal balance and all other amounts payable hereunder shall
> become immediately due and payable, in the case of an Event of
> Default specified (i) in clause (a) above, at the option of Payee;
> and (ii) in clauses (b) or (c) above, ipso facto upon occurrence of
> the Event of Default and without notice, demand, or any further

---

[8]     *See id.* ¶ 101.

[9]     *See id.*

[10]    *See* Omniway Note, Ex. A to 10/1/12 Declaration of John Dellaportas,
third-party plaintiffs' counsel, in Opposition to Third Party Defendant's Motion for
Summary Judgment ("Dellaportas Dec."), at 2.

[11]    *Id.*

[12]    *Id.*

or other action of the payee.[13]

Clause (a) of the Omniway Note defines an Event of Default as: "Maker's failure to pay any of the principal of this Note when due and payable or Maker's failure to pay any interest on this Note when due and payable and such failure to pay interest shall continue for thirty (30) days."[14]  Neither Omniway nor Sharon have made any of the principal or interest payments due under the Omniway Note.[15]

In 2003, Arie Genger and Sharon agreed to substitute Lerner Manor, an Israeli company, for Omniway as a fifty percent stockholder of AG Properties for $25,000 consideration.[16]  As a result, Sagi Genger alleges that he had no knowledge of the Omniway Note prior to this litigation.[17]  In 2004, at the direction of Arie Genger, Lerner Manor was retroactively substituted as a fifty percent interest holder in both the Lincoln and Durocher Trusts for the stated consideration of ten dollars.[18]

In 2004 and 2005, AG Properties sold the Lincoln and Durocher

---

[13]   *Id.* at 3.

[14]   *Id.* at 2.

[15]   *See* Compl. ¶ 109.

[16]   *See id.* ¶ 104.

[17]   *See id.* ¶ 112.

[18]   *See id.* ¶ 105.

properties for a profit.[19]  AG Properties then gave one million dollars of the proceeds to AG Holdings, which used that money to purchase Lerner Manor's fifty percent interest in AG Properties as well as Lerner Manor's fifty percent stake in the Lincoln and Durocher Trusts from Lerner Manor.[20]  Sharon received the proceeds from these transactions.[21]

On October 22, 2007, TPR, AG Properties, Dalia Genger, and D&K Limited Partnership ("D&K") filed an action in Supreme Court, New York County, against Sharon and Lerner Manor alleging fraud, aiding and abetting breach of fiduciary duty, unjust enrichment, and conversion.[22]  On July 10, 2009, the Supreme Court dismissed the Complaint on the grounds that a 2008 divorce arbitration between Arie Genger and his former wife, Dalia Genger, precluded the claim.[23]  The divorce arbitration stemmed from a settlement stipulation that called for a fifty-fifty

---

[19]    *See id.* ¶ 113.

[20]    *See id*. ¶ 114.

[21]    *See id.*

[22]    *See* Third-Party Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def. Mem.") at 2.

[23]    *See* Order Dismissing Complaint*,* Ex. 3 to 10/5/12 Declaration of Elliot Silverman, third-party defendant's counsel, in further support of Third-Party Defendant's Motion for Summary Judgment ("10/5/12 Silverman Dec.")*,* at 3.

5

distribution of marital assets between Arie and Dalia Genger.[24]   Following the distribution of marital property pursuant to the settlement, Dalia Genger alleged that Arie Genger had undervalued and concealed assets, including the Canadian real estate venture.[25]   The arbitrator determined that she "never had any real or equitable marital interest in the Canadian venture."[26]   On September 8, 2011, the Appellate Division affirmed the Supreme Court's dismissal of the complaint.[27]

Vladimir Gusinski, a creditor of AG Holdings, brought a claim for fraudulent conveyance against Genger in this Court in 2010.[28]   Gusinski extended a $2.5 million loan to AG Holdings in 2001. After AG Holdings defaulted in payment, Gusinski obtained a judgment for approximately $4.35 million in the Supreme Court of the State of New York.[29]   In the federal court action, Gusinski alleged that Genger

---

[24]     *See* Brief for Plaintiffs-Appellants TPR Investment Associates, Inc., et al.,  Ex. 1 to 9/17/12 Declaration of Elliot Silverman, third-party defendant's counsel, in support of Third Party Defendant's Motion for Summary Judgment ("9/17/12 Silverman Dec."), at 1-2.

[25]     *See id.* at 9.

[26]     *Id.*

[27]     *TPR Investment Assoc., Inc. v. Fischer*, 929 N.Y.S.2d 138 (1st Dep't 2011).

[28]     *See Gusinski v. Genger*, No. 10 Civ. 4506, 2010 WL 4877841, at *1 (S.D.N.Y. Nov. 30, 2010).

[29]     *See id.* at *2.

intentionally depleted AG Holdings' assets to render it incapable of repaying the loan.[30] Genger then filed a third-party complaint against Lerner Manor, Omniway, and Sharon seeking enforcement of the Omniway Note and contribution and/or indemnification relating to Gusinski's claim.[31]   On May 6, 2011, Genger settled the primary lawsuit with Gusinski for a sum of money.[32]   Sharon now moves for summary judgment on Genger's claims.

## II.  LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment in a defendant's favor is appropriate only if "there is no genuine dispute as to any material fact and [defendant is] entitled to judgment as a matter of law."[33]  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit."[34]

Because Sharon is moving for summary judgment, he "bears the burden

---

[30]     *See id.* at *1.

[31]     *See* Compl. ¶¶ 87-127.

[32]     *See id.* ¶ 90.

[33]     Fed. R. Civ. P. 56(a).

[34]     *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).

of establishing the absence of any genuine issue of material fact."[35]  To defeat Sharon's

motion, third-party plaintiffs "'must do more than simply show that there is some

metaphysical doubt as to the material facts,'"[36] and "may not rely on conclusory

allegations or unsubstantiated speculation."[37]

       In deciding these motions, I must "construe the facts in the light most

favorable to the non-moving party," that is, to plaintiffs, "and [] resolve all ambiguities

and draw all reasonable inferences against the movant," that is, against the defendant.[38]

"The role of the court is not to resolve disputed issues of fact but to assess whether

there are any factual issues to be tried."[39]  "'Credibility determinations, the weighing

of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge.'"[40]

## III.  APPLICABLE LAW

---

[35]  *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

[36]  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

[37]  *Id.*

[38]  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

[39]  *Brod*, 653 F.3d at 164.

[40]  *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (emphasis removed).

## A.  Claim Preclusion

"When a claim has been fully litigated, the doctrine of claim preclusion generally bars the future litigation both of that claim and of any closely related claims."[41] A "federal court must give a state court judgment the same preclusive effect as would be given a judgment under the law of the State in which the judgment was rendered."[42]  Because the relevant antecedent judgment in this case occurred in New York state court, New York law governs the law of preclusion.

New York "has adopted a transactional approach to claim preclusion."[43] Under that approach, "once a claim is brought to final conclusion all other claims [between the same parties] arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."[44] "A pragmatic test [is] applied to make this determination — analyzing whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business

---

[41]     *Acosta-Pelle v. New Century Fin. Serv., Inc.*, No. 09 Civ. 2631, 2009 WL 4927634, at *2 (S.D.N.Y. Dec. 17, 2009).

[42]     *O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir. 2009).

[43]     *McKitchen v. Brown*, 481 F.3d 89, 104 (2d Cir. 2007) (citations and quotation marks omitted).

[44]     *O'Brien v. City of Syracuse*, 54 N.Y.2d 353 (1981).

9

understanding or usage."[45]

"The primary purposes of [claim preclusion] are grounded in public policy concerns and are intended to ensure finality, prevent vexatious litigation and promote judicial economy."[46]  However, courts must be careful not to apply the doctrine "too harshly", and thus, "'[i]n properly seeking to deny a litigant two days in court, . . . deprive [the litigant] of one.'"[47]

## B.  Contribution

Contribution provides that one of two or more joint wrongdoers should not be required to pay more than its share of a common burden.[48]  Accordingly, contribution is allowed only among joint tortfeasors.[49]  "The definition of a joint tortfeasor is fairly broad. A finding of liability is not required."[50]  Therefore, the fact that the prior action

---

[45]    *Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94 (2005) (quotation marks and citations omitted).

[46]    *Id.* (Citations omitted).

[47]    *Id.* (quoting *Reilly v. Reid*, 45 N.Y.2d 24, 28 (1978)).

[48]    *See Epstein v. Haas Sec. Corp.*, 731 F. Supp. 1166 (S.D.N.Y. 1990).

[49]    *See Fromer v. Yogel*, 50 F. Supp. 2d 227, 234 (S.D.N.Y. 1999).

[50]    *Id.*

10

in which Gusinski alleged tortious conduct settled, making an ultimate determination of liability unavailable, does not preclude a contribution action.[51]

### C.  Indemnification

Under New York Law, indemnity is a restitution concept permitting shifting the loss to avoid the unjust enrichment of one party at the expense of the other.[52]  Although indemnification claims usually arise from an express agreement by which one party agrees to hold the other harmless for claims brought against it by a third-party,[53] in the absence of an express contractual provision for indemnification, an implied right of indemnification can still be found.[54]  A person is entitled to implied indemnity when he, "'in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other.'"[55]

Interpreting New York law, the Second Circuit has identified two sets of circumstances in which a right to implied indemnification may exist. *First*,

---

[51]     *See id.*

[52]     *See Mas v. Two Bridges Assoc.*, 75 N.Y.2d 680 (1990)

[53]     *See Knight v. H.E. Yerkes & Assoc., Inc.*, 675 F. Supp. 139, 143 (S.D.N.Y. 1987).

[54]     *See Trustees of Columbia Univ. in the City of New York v. Mitchell/Giurgola Assoc.*, 109 A.D.2d 449 (1st Dep't. 1985).

[55]     *Matter of Poling Transp. Corp.*, 784 F. Supp. 1045, 1048 (S.D.N.Y. 1992) (quoting *McDermott v. City of New York*, 50 N.Y.2d 211 (1980)).

indemnification can be implied from the special nature of a contractual relationship between two parties; this has been called the "implied contract theory."[56]   *Second*, indemnification can be implied when there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other; this tort-based doctrine has been called "implied-in-law" indemnity.[57]

## IV. DISCUSSION

### A. Claim Preclusion

The parties agree that Genger and Sharon were both parties to the 2007 state law claim and that the state court dismissal constituted a final judgment on the merits.[58]   Sharon argues that this judgment precludes Genger's current claim for two reasons.   *First*, Genger's claims stem from the same series of transactions at issue in the prior suit — Sharon's investment in AG Properties — and thus cannot be brought under a new legal theory.[59]   *Second*, Genger could have brought the claim for enforcement of

---

[56]     *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir. 1986).

[57]     *See id.*

[58]     *See* Third-Party Defendant's Reply Memorandum in Further Support of Motion for Summary Judgment ("Reply Mem."), at 2.

[59]     *See* Def. Mem. at 13.

the Omniway Note in the prior suit because Sharon had defaulted on his interest payments.  Accordingly, Sharon argues, Genger had the option to demand payment of the entire unpaid principal balance and all other amounts payable under the Note's acceleration clause.[60]

### 1.    The 2007 Lawsuit Does Not Preclude Genger's Claim for Enforcement of the Omniway Note

Sharon's investment in AG Properties through the Omniway Note constitutes a distinct transaction from the one at issue in the state court action.  The state court action alleged that Sharon defrauded TPR, AG Properties, Dalia Genger, and D&K out of the proceeds from the Canadian real estate venture through a sham transaction.[61]  That transaction, the substitution of Lerner Manor as a fifty percent shareholder in AG Properties for $25,000 consideration, took place in 2003.[62]  Genger now alleges that Sharon made a bona fide investment in AG Properties via the Omniway Note in 2002.  Because the state court action did not address the Omniway Note, litigating its enforcement now will not "'destroy or impair rights or interests'"

---

[60]     *See id.* at 14; Omniway Note at 2.

[61]     *See* 10/22/07 Complaint, Ex. 1 to 10/5/12 Silverman Dec., at 23.

[62]     *See* Compl. ¶ 104.

established in that judgment.[63]   That both the state court action and Genger's current

claim involved "essentially the same course of wrongful conduct" — Sharon's

investment in AG Properties — does not preclude the current action.[64]   Because the

Omniway Note involved a separate transaction than the one at issue in the state court

action, Genger's current action does not constitute claim-splitting.[65]

Moreover, the claims raised in the state court action required different

evidence to support them than Genger's current claim.[66]   To enforce the Omniway Note,

---

[63]      *Sure-Snap Corp. v. State Street Bank & Trust Co.,* 948 F.2d 869, 874 (2d Cir. 1991) (quoting *Herendeen v. Champion Int'l Corp.,* 525 F.2d 130, 133 (2d Cir. 1975)).

[64]      *See Storey v. Cello Holdings L.L.C.*, 347 F.3d 370, 383 (2d Cir. 2003) ("That both suits involved 'essentially the same course of wrongful conduct' is not decisive.") (quoting *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 327-28 (1955)).

[65]      *See American Stock Exchange v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002) ("It is well established, under the doctrine of "claim splitting," that a party cannot avoid the effects of res judicata by splitting her cause of action into separate grounds of recovery and then raising the separate grounds in successive lawsuits.  Rather, a party must bring in one action all legal theories arising out of the same transaction or series of transactions.") (citations omitted).

[66]      *See Interoceanica Corp. v. Sound Pilots Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) ("The fact that both suits involved essentially the same course of wrongful conduct is not decisive; nor is it dispositive that the two proceedings involved the same parties, similar or overlapping facts, and similar legal issues. A first judgment will generally have preclusive effect only where the transaction or connected series of transactions at issue in both suits is the same, that is where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first.").  *See also N.L.R.B. v. United Techs. Corp.*, 706 F.2d 1254,

Genger must demonstrate that it was a valid contract supported by consideration.  In contrast, the state court fraud claim alleged that Sharon aided in preparing phony documents in 2003.[67]  Plaintiffs' unjust enrichment claim in the 2007 state court action disputed the existence of a valid contract between Sharon and AG Property for the purposes of the 2003 transaction.[68]  Genger now asserts that the parties executed a different but valid contract in 2002 and seeks to enforce it.[69]  The 2007 conversion claim alleged an unauthorized possession of the proceeds from the Canadian real estate venture by Sharon, rather than the existence of a legitimate investment in the form of a promissory note.[70]  Finally, plaintiffs' breach of fiduciary duty claim in the 2007 state court action alleged that Sharon aided Arie Genger in breaching his duty to TPR by

---

1260 (2d Cir. 1983) ("Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.").

[67]     *See* 10/22/07 Complaint, Ex. 1 to 10/5/12 Silverman Dec., at 23.

[68]     *See id.* at 25.

[69]     *See* Compl. ¶ 101.

[70]     *See* 10/22/07 Complaint, Ex. 1 to 10/5/12 Silverman Dec., at 25.  *See also Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) ("According to New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'") (quoting *Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36 (1995).

participating in the 2003 transaction.[71]  This requires showing that the 2003 transaction

constituted that breach, that Sharon participated in the breach, and that the plaintiffs

suffered damages as a result.[72]  Neither the earlier unjust enrichment claim nor the

breach of fiduciary duty claim requires the same evidence as Genger's current claim for

enforcement of the Omniway Note, nor did they implicate the transaction now at issue.

> ### 2.   The Omniway Note's Acceleration Clause Does Not Bar Genger's Enforcement Claim

Res judicata bars claims that parties could have raised in prior actions.[73]

However, that parties in privity with Genger could have brought a claim to enforce

missed interest payments on the Omniway Note prior to 2008 does not mean that they

were required to bring claims arising from Sharon's prospective default on payments

not yet due in 2008.[74]  While the Omniway Note gave the payee the option to accelerate

---

[71]      *See* 10/22/07 Complaint, Ex. 1 to 10/5/12 Silverman Dec., at 24.

[72]      *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008) (listing elements of a claim for breach of fiduciary duty).

[73]      *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010) ("The doctrine of . . . claim preclusion[ ] holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)).

[74]      *See Storey*, 347 F.3d at 383 ("Claims arising subsequent to a prior action need not, and often perhaps could not, have been brought in that prior action; accordingly, they are not barred by res judicata."); *Sannon-Stamm Assocs., Inc. v. Keefe, Bruyette & Woods, Inc.*, 68 A.D.3d 678 (1st Dep't 2009) ("since the

payments, it did not require the payee to do so.[75]  Genger retained the option to allow the Note's principal to continue accumulating interest rather than cutting his losses and suing for enforcement of the lesser amount due in 2007.  That he exercised this right does not require this Court to deny him the benefit of the bargain.

               Moreover, the confusion surrounding Omniway's role in the Canadian real estate venture calls into question whether any of the plaintiffs in the 2007 lawsuit could have raised the issue of the Omniway Note in that litigation.  As recently as 2011, Sharon denied knowledge of the Omniway Note.[76]  Moreover, extensive discovery efforts throughout this litigation and a sanction from this Court precluding Sharon from testifying regarding the existence of the Omniway Note were necessary to establish the Note's existence.[77]  Accordingly, denying Genger the opportunity to litigate the Note's enforcement in the case at hand would deprive a litigant of the chance to bring a claim

―――――――――――

issues relating to the nonpayment of the subsequent installments of the placement fee had not matured when the Civil Court action was brought for nonpayment of the first installment of the referral fee, and consequently had never been litigated, this action is not barred by res judicata"); *Southold Sav. Bank v. Fisher*, 269 A.D. 748, 749 (2d Dep't 1945) (bondholder's prior claim for accrued interest and principal did not bar subsequent claims for later interest installments).

    [75]     *See* Omniway Note at 2.

    [76]     *See* 12/14/11 Deposition of Gilad Sharon ("Sharon Dep.") at 53:10, 144:5-10 (claiming that he "never used Omniway to transact any business").

    [77]     *See Genger v. Sharon*, No. 10 Civ. 4506, 2012 WL 3854883, at *6 (S.D.N.Y. Sept. 5, 2012).

rather than preserve the finality of a previous judgment.[78]

### 3. Res Judicata Does Not Bar Genger's Claim for Indemnification and/or Contribution

Res judicata does not bar Genger's claim for indemnification and/or contribution because the claim stems from a 2011 settlement between Genger and Gusinski.[79] Because both the indemnification and contribution claims attempt to shift the cost of tortious conduct established in 2011 from Genger to Sharon, they could not have been brought in 2007.[80]

### B. Indemnification and/or Contribution

#### 1. Sharon Failed to Challenge Genger's Indemnification Claim in His Motion for Summary Judgment

Sharon argues in his reply brief that the Third-Party Complaint does not state a claim for indemnification under New York law.[81] The Court does not consider this argument because Sharon did not raise it in his motion for summary judgment.[82]

---

[78]     *See Reilly*, 45 N.Y.2d at 28 ("These strong policy bases [underlying res judicata], however, if applied too rigidly, could work considerable injustice.").

[79]     *See* Compl. ¶ 90.

[80]     *See First Millennium, Inc.*, 607 F.3d at 918 ("Claim preclusion does not bar claims, even between identical parties, that arise after the commencement of the prior action.").

[81]     *See* Reply Mem. at 6.

[82]     *See Broder v. Cablevision Systs. Corp.*, 418 F.3d 187, 202 (2d Cir. 2005) (arguments first raised in reply brief not properly before court). *Accord*

## 2.    Genger States a Claim for Contribution Under New York Law

Sharon also argues that the Third-Party Complaint does not plead a claim for contribution because New York law permits contribution only among joint tortfeasors.[83]  While true, the settlement giving rise to Genger's contribution claim concerned Gusinski's fraudulent conveyance action.  Under New York law, fraudulent conveyance sounds in tort, not contract.[84]  Unlike Genger's claim for enforcement of the Omniway Note, which stems from the contract itself, the claim for contribution seeks to force Sharon to share the cost of settling Gusinski's tort action.  Accordingly, Genger states a claim for contribution under New York law.

## V.  CONCLUSION

For the foregoing reasons, third-party defendant's motion for summary judgment is denied.  The Clerk of the Court is directed to close the motion for summary judgment.  (Docket Entry #130).  A conference is scheduled for November 29 at 3:30.

---

*Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 345 (S.D.N.Y. 2009) ("a moving party will not be heard to advance a new argument for the first time in its reply brief.").

[83]    Def. Mem. at 18 n.6.

[84]    *See Shelley v. Doe*, 249 A.D.2d 756, 757 (3d Dep't 1998) (discussing the nature of fraudulent conveyance claims under New York law).

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            November 19, 2012

**-Appearances-**

**For Third-Party Plaintiffs:**

John Dellaportas, Esq.
Evangelos Michailidis, Esq.
Duane Morris, LLP
1540 Broadway
New York, New York 10036
(212) 692-1000

**For Third-Party Defendant:**

William B. Wachtel, Esq.
Julian D. Schreibman, Esq.
Elliot Silverman, Esq.
Wachtel Masyr & Missry LLP
One Dag Hammarskjold Plaza
885 Second Avenue, 47th Floor
New York, New York 10017
(212) 909-9500